## THE STATE ex rel. CITY OF MARSHALL v. GEORGE E. HACKMAN, State Auditor.

### In Banc, May 17, 1918.

1. **MANDAMUS: Discretion of Court to Issue.** Mandamus is a civil remedy provided by law in certain cases, and it is as much error to refuse it when warranted by all the facts and circumstances held in judgment as it would be to refuse a lawful remedy for any other infracted legal right. Such a refusal in either case would be an abuse of judicial power and discretion.

2. **ELECTRIC LIGHT: Power of Cities to Purchase Plant.** The various statutes, when read *in pari materia*, authorize cities to incur indebtedness for purchasing as well as constructing electric light plants.

3. ———: ———: **Additional Five Per Cent.** Section 9664, Revised Statutes 1909, is a practical rescript of Section 12a of Article 10 of the Constitution, and was intended to enlarge the power granted to cities to acquire electric light plants and other public utilities; and said Section 12a provides for increasing the limit of indebtedness authorized by the original constitutional provision to an additional five per cent of the assessed valuation of the taxable property in a city above the previous five per cent permitted by the former constitutional provision.

4. ———: ———: **Indebtedness Within Limits of Additional Five Per Cent.** It was not the intent of amendatory Section 12a to Article 10 of the Constitution, to forbid a city to issue bonds unless the indebtedness to be secured was an amount beyond the five per cent originally permitted to be incurred and within an additional five per cent. The purpose was to give to the city the power to incur an indebtedness for the purposes named in the amendatory section in any amount which does not exceed the aggregate of the ten per cent specified, whether for the purpose of purchasing or constructing electric or other light plants.

5. **CONSTITUTIONAL CONSTRUCTION.** Provisions of the Constitution, like statutes dealing with a single subject, must be interpreted according to the plain meaning of the language employed and the paramount purpose of its framers to provide a rational, congruous and symmetrical chart of government.

6. **CITY INDEBTEDNESS: Time for Election.** An election by a city of the third class, held for the purpose of authorizing the city to issue bonds for the purpose of purchasing or constructing an electric light plant, is not required to be held on the first Tuesday in April. It may be a special election, and held, in accordance with proper city ordinances, on a date different from the date of the general election for elective officers.

7. ————: **Manner of Holding Election: Irregularities: Absence of Fraud.** The manner of holding an election to authorize a city to incur an indebtedness for the purpose of purchasing an electric light plant is prescribed by the Australian Ballot Law; but absent fraud or a mandatory statute, irregularities in the method of voting, such as relate to furnishing booths, the duties of the judges of election and the certification of the result, are not substantial violations of that law, and do not invalidate the bonds.

8. ————: **Illegal Voters.** An election by a city to incur an indebtedness for the purpose of purchasing an electric light plant will not be held void because some of the voters were disqualified, if after the elimination of all such voters, there still remains a majority of two-thirds in favor of the proposition.

9. ————: ————: **Raised in Mandamus or by State Auditor.** In a mandamus proceeding brought by a city against the State Auditor to compel him to register bonds voted by a city for the purpose of purchasing or constructing an electric light plant, a contention that some of the voters were disqualified and for that reason the election was void, cannot be considered. A mandamus proceeding is not an election contest, and the questions that certain votes at the election were disqualified by conviction of crime or non-residence are triable only in election contests. Neither do the statutes prescribing the duties of the State Auditor in the matter of the registration and certification of municipal bonds authorize him to raise or determine such questions.

## Mandamus.

WRIT GRANTED.

*Richard L. Goode, William T. Bellamy* and *Virgil V. Huff* for relator.

(1) The city of Marshall has been given direct statutory power, to erect or acquire by purchase, and maintain and operate an electric light plant. The power is conferred on the city council of any city,

town or village in the State. R. S. 1909, sec. 9904. And it is conferred by another statute on cities of the third class and those under special charters and with less than thirty thousand inhabitants. R. S. 1909, sec. 9914. And by still another section, the power is conferred by fair implication on any city in the State, which has not more than thirty thousand nor less than two thousand inhabitants. R. S. 1909, sec. 9664. See also Section 9238, which empowers cities of the third class to provide for street lighting by contract, etc. (2) To enable cities to carry out the power thus conferred, authority to contract a debt by the issue of municipal bonds to be discharged by taxation, is likewise conferred. R. S. secs. 9544-9548, 9914, 9664. These statutes authorize cities to exceed the limitations on municipal indebtedness provided for in Section 12, Article 10, of the Constitution; but the city of Marshall does not need to exceed the original limitation in the Constitution. Its total debts, including this issue of bonds, will not exceed that limitation. (3) The election upon the question of issuing the bonds was lawfully held on June 26th, and was not required to be held on the first Tuesday in April, the day fixed by statute for the election of city officers. R. S. 1909, sec. 9545. (4) The statutes that are in *pari materia* upon the question of by whom the votes cast at special elections, upon the proposition to incur a municipal debt, shall be counted, canvassed and the result ascertained and declared, plainly entrust these tasks to the city council, and not to the city clerk, assisted by two justices of the peace or two county court judges, after analogy to the work of county clerks in ascertaining general election results under Secs. 5911, 5912, R. S. 1909. See Sections 9545, 9546, R. S. 1909, relating to special bond elections and Section 9145 relating to elections in third class cities. Those statutes provide specially for the returns of a bond election to be sent to, and the result ascertained by, the city council, just as Section 6145 et seq. provides specially for those matters in general elections in cities of more than one hundred thousand in-

habitants. It is a rule of statutory construction that enactments specifically regulating a particular matter, are controlling as against general enactments. In the following cases the statement of facts and the opinions show the same method was observed as in the case at bar to ascertain and declare the result of the election (i. e. by the city council.) Such has been the unchallenged custom. State ex rel. v. Wilder, 200 Mo. 97; State ex rel. v. Gordon, 217 Mo. 103; State ex rel. v. Finley, 74 Mo. App. 213. (5) The law in respect of secrecy of the ballot was substantially observed. Whatever irregularities occurred in this regard were confined to the ward poll and were due to the inadvertence of some of the voters, not to the city of Marshall, nor the election officials. Booths were provided but some voters chose not to use them. No general or fraudulent disregard of the policy of the law, such as would justify annulling the election, occurred. Skelton v. Ulen, 217 Mo. 383; Hall v. Schoeneke, 128 Mo. 661; Mills v. Meen, 193 Mo. App. 306; Patton v. Walkins, 131 Ala. 387, 80 Am. St. 43; Morgan v. Van Deventer, 12 Wash. 377, 50 Am. St. 90; Conaty v. Gordon, 75 Conn. 46; Perry v. Hackney, 11 N. D. 148. (6) If one or two of the substitute judges were appointed irregularly (that is without the consent of the voters present), which we deny, this circumstance would not vitiate the election even in the precincts where it occurred. They were *de facto* officers at any rate, and their authority is not questionable collaterally. State v. Swearingen, 128 Mo. App. 614; Sanders v. Lacks, 142 Mo. 255; Trust Co. v. Morganfield, 96 Ky. 563; Well v. Taylor, 5 Mont. 202; People v. Cook, 8 N. Y. 67, 59 Am. Dec. 451; McCraw v. Harrelson, 44 Tenn. 34; State v. Brien, 38 N. W. 368; Kirkpatrick v. Viekers, 24 Kan. 368. (7) Presence of outsiders in polling places while some of the ballots were counted is no ground for setting aside the election; see Skelton v. Ulen, 217 Mo. 383; Roberts v. Calver, 98 N. C. 380. Fraudulent irregularities not shown to affect result, do not annul vote unless a statute so declares. 18 Am.

Dig., p. 319; 9 R. C. L. 197, and cases in note 17; 9 R. C. L. 1092, and cases in notes 11 and 12. (8) Practically nothing was proved as to the form in which the returns were sent in to the council by the election officers not being according to the statutes. Failure of the judges and clerks to certify the poll books, had such failure occurred (and it did not), would not have been fatal to the vote of a precinct. Laughlin v. Kirkwood, 107 Mo. App. 319, 320; State v. Siller, 24 Kan. 13. Irregularities of this kind are never cause for annulling an election or the vote of a precinct. Paine on Elections, secs. 581, 585, 595, 600; Noward v. Shields, 16 Ohio St. 184; Richardson v. Ramy, 1 El. 224; State v. Siller, 24 Kan. 13; Johnson v. Cole, L. H. R. 36. The statutes (Australian Ballot Law) were substantially observed in holding the election. Proper notice was given of the date and polling places, and whatever deviations from the law occurred, neither changed the result nor threw it into uncertainty, nor were due to any fraudulent purpose on the part of the city. Nor were there any deviations from the law of a kind that the statutes say shall render an election void. A few illegal votes were cast, but the simplest calculation shows these could not have changed the result. Some voters refused to observe secrecy in preparing their ballots, but every opportunity was afforded them to do so. No authority can be found which would set aside the result on account of these derelictions on the part of the voters. (9) It is not lawful in this case to investigate the legality of votes cast with reference to the residence or qualifications of voters, and this for two reasons: the issue is not within the scope of the pleadings, nor is such matter competent to be inquired of in a proceeding against the Auditor to compel registration of bonds, but only in an election contest. And if the statutes provide for no contest the decision of the election judges as to such question, as shown by the election returns, is final. That is, no inquiry can be had. State ex rel. v. Dillon, 87 Mo. 487; State ex rel. v. Francis, 88 Mo. 557; Kehr v. Columbia, 136 Mo. App.

322; State v. Gamma, 149 Mo. App. 694; State ex rel. v. Spencer, 164 Mo. 34. In collateral proceedings, evidence to contradict the returns is not competent. State ex rel. v. Dillon, 87 Mo. 487; State ex rel. v. Francis, 88 Mo. 557; State ex rel. v. Elkins, 130 Mo. 90. The functions of election judges in deciding upon the qualifications of voters and their right to vote are judicial in character, and for this reason also may not be collaterally attacked, except for fraud, not alleged in this cause. McGown v. Gardner, 186 Mo. App. 484; Blake v. Brothers, 79 Conn. 676, 11 L. R. A. (N. S.) 501.

*Frank W. McAllister*, Attorney-General, *S. P. Howell*, Assistant Attorney-General, and *Fordyce, Holliday & White* for respondent.

(1) The writ of mandamus is not a writ of right. Its issuance rests in the discretion of the court. State ex inf. v. Gas. Co., 254 Mo. 531; State ex rel. v. Wilder, 211 Mo. 319. (2) It was the duty of the State Auditor to determine whether all the conditions of the laws of the State had been complied with in the issuance of the bonds. Sec. 1275, R. S. 1909; Hoff v. County, 110 U. S. 53; State ex rel. v. Gordon, 251 Mo. 311; Thornburg v. School District, 175 Mo. 12; Evans v. McFarland, 185 Mo. 703; State ex rel. v. Gordon, 268 Mo. 326. (3) The conditions of the laws had not been complied with in the issuance of the bonds in question, for the election at which the people of Marshall were alleged to have voted in favor of the bonds was illegal and void because: (a) The election was not held on the day required by law. Secs. 9545, 9546, 9145, R. S. 1909; Ordinance No. 9 of the City of Marshall; Sec. 8057, R. S. 1909; State ex rel. v. Jenkins, 43 Mo. 265; State ex inf. v. Dabbs, 182 Mo. 366; State ex rel. v. Ellison, 271 Mo. 129. (b) The city of Marshall, a city of the third class, has no authority, under the law of the State, to issue and sell bonds for the purpose of purchasing an existing electric light plant.

Sec. 9914, R. S. 1909, as amended Laws 1911, p. 352; Secs. 9238, 9545, R. S. 1909; State ex rel. v. Wilder, 200 Mo. 104; Hazelhurst v. Mayes, 96 Miss. 606.   (c) The election was not conducted in accordance with the Australian Ballot Law, in that persons not qualified to vote, persons not residents of the city of Marshall, persons residing in a ward of the city other than that in which they voted, were all permitted to cast their ballots and the secrecy of the ballot was not protected. Chapter 43, R. S. 1909; Gaston v. Lamkin, 115 Mo. 20; State ex rel. v. Seibert, 116 Mo. 418; Miles v. Macon, 193 Mo. App. 306, 269 Mo. 151; Ordinance No. 9 of the City of Marshall, sec. 4; Sec. 5800, R. S. 1909; Hall v. Schoenecke, 128 Mo. 670; Lankford v. Gebhard, 130 Mo. 634.   (4) The commissioner erred in refusing respondent's request that the ballots cast at the election be produced and examined. Sec. 3, Art. 8, Mo. Constitution; Secs. 5905, 5939, R. S. 1909; State ex rel. v. Thurman, 267 Mo. 546; Gantt v. Brown, 238 Mo. 571.

BOND, J.—I. In this case it is stipulated that the petition for mandamus is to be treated as and for the alternative writ ordered by this court.   The object of the suit is to compel the State Auditor to register bonds of the city of Marshall for $75,000, which were authorized at a special election held on June 26, 1916, to raise funds wherewith to build or buy an electric light plant to serve the city and its inhabitants.

The case was referred to a commissioner to take proof and report, which not having been made, a stipulation dispensing therewith and submitting the case on the evidence adduced · before the commissioner, was filed March 4, 1918, with leave to furnish briefs thereafter.

It is conceded in the brief of respondent that the narrative of the evidence in relator's brief is, in the main, fair and correct. It is, however, insisted that a peremptory writ should not issue. While many grounds for that contention are set forth in the return of respondents, only those urged in his brief and written

argument need be ruled.  In substance these are: first, that the city of Marshall had no statutory authority to issue bonds to purchase an electric plant; second, that the special election authorizing the bonds was not held on the day required by law; third, that the election was illegal because not held in conformity with the requirements of the Australian ballot system. [R. S. 1909, secs. 5889-5923 and 5921.]

The foregoing are the only objections to the registration of the bonds relied on in the brief.  They will be considered in order.  Before doing this,

**Discretion.**

however, it is well to note a preliminary point urged in the brief of respondent, that the writ invoked is not one of right, but is one which is rested in the discretion of the court.  As to this  contention, it need only be said that the true principle is, that mandamus is a civil remedy provided by law in certain cases, from which it necessarily follows that it is as much error to refuse it when warranted by all the facts and circumstances held in judgment, as it would be to refuse a lawful remedy for any other infracted legal right.

Such a refusal in either case would be an abuse of judicial power and discretion and would be correctible if an appeal or writ of error would lie.  The specific redress provided by law for a violation of civil rights is *ex debito justitiae* and is not left to the unreviewable discretion of any court or judicial officer; for that would be repugnant to the spirit and philosophy of the law and genius of free government, neither of which could tolerate autocracy of administration in any sphere of service.  In forms of government of which ours is the most advanced protagonist, the sole repository of supreme power is the law of the land, which decides only after a hearing and trial and must decree even-handed justice to every human being.  Such a state could not exist if its legal or governmental policy were vested in the unregulated discretion of any agent. In a free country a judge may apply, he cannot make the law.

II. Recurring to the vital questions in the case, the relator is a city of the third class and is invested with express statutory authority "to erect or to acquire by purchase or otherwise . . . electric light and power plant . . . to provide for the erection or the extension of the same by the issue of bonds therefor, and any such city . . . which may own . . . or which may hereafter acquire by purchase . . . any of the plants, systems or works mentioned in this section, is hereby authorized and empowered to establish . . . . a board of public works" to take charge of and exercise control over such public utilities. [R. S. 1909, secs 9914, 9917; later re-enacted in substance, Laws 1911, p. 352.]

City Indebtedness.

In addition to the express power given to cities specified in the section (R. S. 1909, sec. 9914; Laws 1911, p. 352.) the power to erect or buy electric light plants is given to all cities of the State by a distinct provision of the statutory law. [See R. S. 1909, sec. 9904.] To exercise these specific and general powers, statutory and constitutional provisions have been enacted and adopted which, by inter-relation, cover the entire subject and prescribe the method by and the extent to which the municipalities shall become indebted. When read *in pari materia* these sections plainly show that the cities, towns and villages of the State may incur indebtedness for purchasing as well as for constructing electric plants. For example: Section 9544, Revised Statutes 1909, authorizes them to become indebted for charter purposes, or when authorized so to do "by any general law of the State," etc. And Section 9904, by a general law of the State, empowers them "to acquire by purchase" electric plants. Hence it is clear that the two sections of the statutes dovetail with each other and afford full statutory power on the part of relator to contract the indebtedness in question, either to build or to buy an electric plant. Again, Section 9664 is a practical rescript of Section 12a of Article 10 of the Constitution (State ex rel. v. Wilder, 200 Mo. 1. c. 105) and was intended to enlarge the power granted (in

Section 12, Article 10, of the Constitution) municipalities to acquire electric plants and all other public utilities. This amendatory provision of the Constitution provides for increasing the limit of indebtedness authorized by the original provision to an additional five per cent of the assessed value of the taxable property of the cities above the previous five per cent permitted in the former provision of the Constitution. The latter provision of the Constitution further amends the former by providing that the indebtedness thus permitted to be increased shall be usuable "for the purpose of purchasing or constructing . . . electric or other light plants." It would be a narrow, if not absurd, view of this amendment to hold that it did not intend to authorize the creation of an indebtedness for purchasing such a plant, unless the city in order to do so would have to avail itself of the five per cent additional taxation which the amendment gave it the power to levy. The obvious design of the amendment of the Constitution was to foster municipal ownership by increasing the amount of public indebtedness for the acquisition, whether by erection or purchase, of the great necessaries of urban life and to grant power to cities to become indebted for that purpose in any sum not exceeding a total of ten per cent of the assessed value of their property to be ascertained as provided in the original provisions of the Constitution, to-wit, Section 12 of Article 10. It was not the intent of the new section to forbid a city to issue bonds unless the indebtedness to be secured was for an amount beyond the five per cent originally permitted to be incurred and within an additional five per cent; but it was the manifest purpose of the amendatory provision of the Constitution to give to such cities the right to exercise the powers and franchises therein granted in any case where the indebtedness, whatever its amount, did not exceed the aggregate of ten per cent specified in the amendatory provision. Any other theory of the purposes of the amendatory provision would be inconsistent with its language and object and in contra-

vention of the established cannon of construction that provisions of the Constitution, like statutes dealing with a single subject, must be interpreted according to the plain meaning of the language employed and the paramount purpose of its framers to provide a rational, congruous and symetrical chart of government. [Calland v. Springfield, 264 Mo. l. c. 301, 302.]

The clear and explicit grant of powers contained in the statutes and Constitution heretofore cited, leave no room for doubt that the city of Marshall had the statutory power to incur the indebtedness evidenced by the issuance of the bonds in question, under the facts in this record, which show that it did not exceed the constitutional proportion of the assessed value of its property ascertained as provided in the Constitution, at the date of the execution of its bonds, provided the election, was legally held and the proposition to increase the indebtedness was legally carried.

III. The election was held at a time contemplated by law. Section 9545, Revised Statutes 1909, among other things provides that a city, town or village desiring to submit to its voters the question of the issuance of bonds like those under review, through its proper authorities, "shall order a special election to be held" upon prescribed notice; that "such election shall be held and judges thereof appointed as in case of other elections in such municipalities." Section 9546 prescribes the form of the ballots; Section 9145 provides "a general election for the elective officers" of cities of the class of relator "shall be held on the first Tuesday in April . . . and every two years thereafter." In accordance with the latter of these sections, Ordinance 99 of the City of Marshall, so far as pertinent, provided that "on the first Tuesday in April, 1906," and biennially thereafter "a general election" should be held in that city as prescribed by law for mayor, marshal, city attorney, police judge and other city officers. It is the theory of the learned counsel for respondent that

*Time of Election.*

the foregoing statutes and ordinances by cross-reference imply that the "special election" provided in the first section above quoted must be held on the date fixed for "general elections" in the relator city. We are unable to concur in that view. The only necessary intendment of the statutes and ordinance supra is that the date for the holding of "general elections" in the city of Marshall must take place biennially on the first Tuesday of April. There is nothing in the language of these statutes and ordinance which necessarily implies that "special elections" which cities like the relator are authorized to call for the purpose of incurring municipal indebtedness, should be held on the fixed date prescribed by law and ordinance for the election of officers of such cities. The provision with reference to such special elections (viz., such elections shall be held and the judges thereof appointed as in case of other elections in such municipalities, R. S. 1909, sec. 9545, supra) only requires similarity as to the method and manner of holding the two kinds of elections; it does not necessarily imply that they can only be held on the same date. Such a construction is not demanded by the terms of the statutes and would result in much inconvenience and delay in the exercise by such cities and towns of their lawful rights to erect or purchase public utilities indispensable for the public welfare. In cases wherein this court has passed upon the exercise of such powers, it was not thought indispensable that such elections should be held on the date prescribed by law for general elections in such towns and cities. In a recent deliverance by this court In Banc (State ex rel. City of Memphis v. Hackman, 273 Mo. 670) it appeared that an election for the identical purpose of the one under review was held on February 28, 1916. In that case a peremptory writ of mandamus was awarded to compel the registration of bonds. So also in the following cases the elections of the kind under review were held at other dates than those prescribed by law for the holding of general elections: State ex rel. Carthage v. Gordon, 217 Mo. 103; State ex rel. Dexter v. Gordon,

251 Mo. 303; Bauch v. City of Cabool, 165 Mo. App. 486.

In the case of State ex rel. Dexter v. Gordon, 251 Mo. 303, neither in the majority nor in the dissenting opinion was any importance attached to the fact that the election then under review was held in August and not on the first Tuesday in April. The effect of these rulings, particularly the one in State ex rel. Dexter v. Gordon, supra, where a mandamus to compel the registration of bonds was denied, is equivalent to a holding that the statutes supra were not susceptible of a construction requiring a special election for the issuance of bonds to be held on the date of the general election, for if that had been the proper interpretation of the statutes, the ruling in the case of State ex rel. Dexter v. Gordon, supra, would have been placed on the ground that the issuance of the bonds was void because voted for at an election held on a date other than that required by law. No such conclusion was reached in that case and if it had been permissible there would have been no occasion for the dissenting opinion filed in that case. We therefore overrule the contention that the election for the issuance of the bonds involved in this proceeding was held on an improper date.

IV. We think the proposition to incur the indebtedness was lawfully carried at the election held for that purpose. We concede that the manner of holding the election under review is prescribed by what is known as the Australian Ballot Law (Art. 5, Ch. 43, R. S. 1909). A careful consideration of the relevant testimony in this case satisfies us that in its essential features this election code of the State was substantially complied with and that the result of the election showed a two-thirds majority of those voting in favor of the proposition to incur the indebtedness evidenced by the bonds sought to be registered. Many of the points urged in favor of the contrary view by the learned counsel for respondent, while specifically different, were not generic-

ally unlike the objections urged to the registration of the bonds in the unreported manuscript decision of State ex rel. City of Memphis v. Hackman, supra. The effect of the doctrine announced in that case it that, absent fraud or a mandatory statute, an election like the one under review will not be set aside for mere irregularities in the method of voting, such as relate to furnishing booths, the duties of the judges of election and the certification of the result of the election. [See also Bine v. Jackson Co., 266 Mo. 1. c. 240; Bowers v. Smith, 111 Mo. 45, and Skelton v. Ulen, 217 Mo. 383.] Under the authority of State ex rel. v. Hackman, supra, we are not prepared to say that the complaints of the respondent in these respects involve substantial violations of the Australian Ballot Law, and accordingly overrule the assignment that such law was contravened in the election in the instant case.

V. It is finally urged by the learned counsel for respondent that the election in this case was void because twenty-six illegal votes were cast thereat by persons not entitled, on account of non-residence and other legal disqualifications, to participate in the election. A careful examination of the testimony discloses that the result of the election would not be affected if these votes were subtracted from those given in favor of incurring the indebtedness, since that would leave more than a two-thirds vote cast in favor of the proposition. The total of the votes cast was 1251; 857 being for bonds and 394 against. It is evident that if 26 be deducted from those favoring the bonds, a two-thirds majority would remain. But the question is not before us in this case. Respondent sought to amend its return by specifying these grounds for annulling the election. This court denied that motion for the reason that no such issues can be raised in a mandamus proceeding to compel the registration of bonds. Such a proceeding is not an election contest in any sense. The duties of the State Auditor in the matter of the regis-

*Illegal Voters.*

tration of bonds of municipalities are regulated and prescribed in Section 1275, Revised Statutes 1909, which provides, among other things, for the registration of municipal bonds in the same manner State bonds are registered and for a certificate endorsed by the Auditor on the bonds "that all conditions of the laws have been complied with in its issue, if that be the case, and also that the conditions of the contract under which they were ordered to be issued have also been complied with, and the evidence of that fact shall be filed and preserved by the Auditor; but such certificate shall be prima-facie evidence only of the facts therein stated and shall not preclude or prohibit any person from showing or proving the contrary in any suit or proceeding to test or determine the validity of such bonds, or the power . . . to issue such bonds; and the remedy of injunction shall also lie at the instance of any taxpayer, . . . to prevent the registration of any bonds alleged to be illegally issued and funded under any of the provisions of this article." It is obvious at a glance that the above statute makes no provision for the contest of an election or for the trial of issues determinable only in a suit to contest an election. It is settled law that election contests did not exist at common law, but are purely creations of statute. Whether or not the twenty-six voters in question were disqualified by conviction of crime or non-residency, would present questions triable in election contests, whenever authorized by statute, but they could not be collaterally inquired of in a mandamus proceeding brought under the above statute to compel the registration of bonds. [State ex rel. v. Dillon, 87 Mo. 487; State ex rel. v. Francis, 88 Mo. 557; State ex rel. v. Hough, 193 Mo. l. c. 643; Kehr v. Columbia, 136 Mo. App. 322; State ex rel. v. Elkin, 130 Mo. 90; State v. Gamma, 149 Mo. App. 694.]

Our conclusion is that upon the presentation of the bonds to the State Auditor, under the circumstances and facts of the present record, a prima-facie showing was made that they had been issued in compliance with

the conditions prescribed by law, and that it was his specific duty to have registered them in the manner prescribed in the above statute.

It follows that the alternative writ of mandamus heretofore awarded is made permanent. It is so ordered. *Walker, Woodson* and *Williams, JJ.,* concur; *Graves, C. J.,* and *Blair, J.,* concur in paragraphs 2, 3, 4 and 5 and the result; *Faris, J.,* dissents.