STATE OF MISSOURI, AT THE RELATION OF JOHN COLLINS, DOING BUSINESS AS WONDER BAR TAVERN, (APPELLEE), RELATOR v. JOSEPH F. KEIRNAN, DIRECTOR OF THE DEPARTMENT OF LIQUOR CONTROL OF KANSAS CITY, MISSOURI, (RESPONDENT), APPELLANT.—207 S. W. 2d 49.

Kansas City Court of Appeals. Opinion delivered December 1, 1947.

*David M. Proctor* and *Henry Arthur* for appellant.

*Myer M. Rich* and *O. Hampton Stevens* for appellee.

BLAND, J.—This is a proceeding in mandamus, wherein John J. Collins, seeks to obtain a peremptory writ against Joseph F. Keirnan, Director of Liquor Control of Kansas City, a municipal corporation, commanding him to issue a city permit to relator to sell intoxicating liquors at retail by the drink and otherwise, for the calendar year 1945, in the premises located at 3922 Main Street, in Kansas City.

The court below issued a peremptory writ of mandamus, as prayed, and respondent has appealed.

The controversy involved in this case relates to the question as to whether the tavern in question is located within the proscribed distance of a church. The evidence shows that the tavern known as the Wonder Bar has been in continuous operation at the premises known as 3922 Main Street, in Kansas City, since December 1934; that the operators thereof obtained licenses from the state and city authorities, continuously, until the proceedings hereinafter mentioned.

The evidence further shows that the relator purchased the business from Mrs. Sansone, his immediate predecessor, in September 1942 for $15,000, and continued the operation thereof; that the Calvary Baptist Church is located in the 3900 block on Baltimore Avenue, the rear of which is opposite to the rear of the Wonder Bar premises; that the intervening space between the two buildings measures 93.7 feet.

Section 4948, which has been in force and effect since 1935 (see laws 1935, section 267) provides that no license for the sale of intoxicating liquor shall be granted within 100 feet of any church without the applicant first having obtained the consent, in writing, of the majority of the managing board of such church; that the board of aldermen, city council or other proper authorities may, by ordinance, prohibit the granting of a license for the sale of intoxicating liquor within a distance as great as 300 feet; that "in such cases and where such ordinance has been lawfully enacted, no license of any character shall issue in conflict with such ordinance while such ordinance is in effect."

Ordinance 3437 of Kansas City, passed on January 29, 1934, provides: "No license shall be issued to any applicant to sell liquor by the drink in any place or premises outside of the boundaries of the district defined and described in Section 12 hereof, when such place or premises is located on either side of the same street, within the same block with any church located thereon."

Ordinance 3437 was appealed, with a saving clause, by Ordinance 6958 passed on December 22, 1941. Paragraph 3 of Section 14 of Ordinance 6958 provides: "No unlimited sales by drink permit and license and no malt liquor sales by drink permit and license shall be issued for the sale of intoxicating liquor at any location when such location is within 300 feet of any school, church, or other building regularly used as a place of religious worship."

Paragraph 4 of Section 14 of Ordinance 6958 provides: "No retail permit and license, as herein provided for, shall be issued unless the location for which such permit and license are sought conforms with the provisions of the laws of the State of Missouri, relating to the location of retail liquor establishments."

Paragraph 5 of Section 14 of Ordinance 6958, provides: "Nothing contained in the foregoing restrictions as to the location of retail liquor establishments shall affect the continuation of retail liquor establishments which were properly located in conformity with the provisions of the ordinances of Kansas City, Missouri, which were in effect prior to the enactment of this ordinance."

The facts show that the Wonder Bar was not at any time located on either side of the same street, within the same block with any church located thereon. Owing to the fact that the premises in question were located within 100 feet of the Calvary Baptist Church no license could have been granted by the State for the operation of the bar in question without the operator thereof having first obtained consent in writing of the managing board of such church. (See Section 4948.) However, the state licenses were granted to relator and his predecessors apparently on the theory that the consent of the managing board of the church had been obtained. The application of Mrs. Sansone for a state license for the year 1939 recites that the tavern was "86 feet from church—consent attached." The

"consent attached" which has always remained in the files of the State Supervisor of Liquor Control, and which relator relied upon when he purchased the tavern from Mrs. Sansone, was signed by W. Morris Ford, Pastor, and reads as follows:

"We, the members of the Calvary Baptist Church, while not at all in favor of any place which dispenses strong drink, make no objections to the Wonder Bar, the rear of which is 86 feet from the rear of the Church building. The nearness of the building is not the objectionable point. Having been at the same location for more than four years and having caused us no trouble, the Wonder Bar will not be molested."

There were numerous other liquor dispensing places in the same vicinity.

Before writing this letter Dr. Ford did not obtain the consent of the managing board of the church for the writing thereof. It is contended by the respondent that, for this reason, there was no legal consent by the church to the location of the tavern in question. Subsequent to the writing of the letter the church changed pastors and the new pastor caused the board of deacons of the church, which is its managing board, to file with the State Supervisor of Liquor Control, an application or petition for the revocation of the state license of the relator on account of the nearness of relator's place of business to the church. The State Supervisor evidently either concluded that this application or petition amounted to a withdrawal of the consent of the church to the location of the Wonder Bar within 100 feet of the church or that the letter of Dr. Ford was unauthorized in the first place. Notice was given and a hearing was held in the office of the State Supervisor in Jefferson City sometime in December 1944. At this hearing the State Supervisor suggested to the relator that if a partition should be erected inside the building separating the front portion thereof from the rear so as to render the front room of the premises more than 100 feet from the church, relator's license would be renewed. The State Supervisor held the matter in abeyance until it was reported to him by the deputy state supervisor at Kansas City that relator had in fact erected a partition inside of his building separating the rear part thereof from the front portion, which partition was more than 100 feet from the church. Thereafter, relator filed a new application with the State Supervisor for a license to sell liquor by the drink. This application was approved and relator obtained a renewal of his license on the same day and the supervisor cancelled the old one.

After relator obtained a renewal of his license from the State Supervisor he filed a formal application with the respondent, Director of Liquor Control of Kansas City, for a city permit. Upon protest being lodged by the Board of Deacons of the church, respondent

held a hearing, received evidence and, on February 6, 1945, entered an order in which he found that the tavern was at that time, and always had been, operated unlawfully, because it was within 100 feet of the Calvary Baptist Church and "for the reason that said tavern was never properly located and is not now properly located regardless of a partition within the building, I am refusing to approve the application and to issue a permit to John J. Collins, to sell intoxicating liquor at the 'Wonder Bar', 3922 Main Street."

Thereafter, relator filed this proceeding in mandamus. Respondent testified that relator personally was qualified in every way for a license and that the only question presented was one of law; that, under such circumstances, he referred the matter to the City Counsellor; that "he (the City Counsellor) is my guiding star in matters of this kind, and I followed his opinion and denied Mr. Collins a license." In a written opinion of an assistant city counsellor he held that as the tavern was within 100 feet of the church at the time of the enactment of Ordinance 6958 the operator thereof was not saved by the provisions of the saving or "grand-father" clause of the ordinance; that the tavern was required to be lawfully located as required by the state statute as well as by the ordinances of the city and, as the tavern was not located in accordance with the statute, the tavern was not properly and lawfully located at the time of the enactment of Ordinance No. 6958. Therefore, the permit should be refused.

Ordinance No 3437 did not provide that the tavern should be more than 100 feet from a church, but merely that it be not located in premises on either side of the same street within the same block with a church located thereon. By reading the state statute into this ordinance one could arrive at the conclusion reached by the assistant city counsellor and while it may be true that, at the time of the enactment of Ordinance No. 3437, no tavern could be legally located in Kansas City which was within 100 feet of a church, without the consent of the managing board of the church, the ordinance made no such requirement, it evidently being the purpose of the city council to leave the matter of the proper location of the tavern, so far as the state law was concerned, to the state authorities, the city being only concerned with its own rules and regulations with reference to such matters.

There is some mention in the brief as to whether Ordinance No. 3437 was an invalid one, as being in conflict with Section 4948 of the state statute. We are of the opinion that the ordinance was a valid one, for the reason that there is no conflict between the provisions of the statute and the ordinance. The latter merely supplements the statute by imposing additional requirements for the location of a tavern. (St. ex rel. Hewlett v. Womach, 196 S. W. (2nd) 809.)

The provisions of Ordinance No. 3437 are plain and unambiguous and are not open to construction. It is well settled that where the language of a statue is plain and unambiguous and its meaning is clear and unmistakable there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself. (State ex rel. Cobb v. Thompson, 5 S. W. (2nd) 57, 59, and cases therein cited.)

Therefore, we are of the opinion that the tavern in question comes within the provisions of paragraph 5 of Section 14, Ordinance No. 6958, and that it was at the time of the passage of the ordinance properly located so far as the city authorities are concerned.

However, even were it necessary for the tavern to be located in accordance with the provisions of the statutes of the state, to be saved by the "grand-father" clause of Ordinance 6958, respondent is in no position to attack, directly or indirectly, the decision of the State Supervisor of Liquor Control, granting licenses for the operation of the tavern. In discharging his functions in issuing licenses the Supervisor exercises a judicial discretion. (St. ex rel. Renner v. Noel, 140 S. W. (2nd) 57.) A license which appears on its face to have been regularly and duly issued cannot be impeached collaterally. (33 C. J. p. 532.) "A municipal corporation can have no other source than a sovereign power, its creation is an attribute of sovereignty. It is a political creature, and the creature cannot be greater than its creator." (43 C. J. pp. 76, 77. See, also, City of St. Louis v. Tielkemeyer, 226 Mo. 130, 140; State ex rel. Nigro v. Kansas City, 27 S. W. (2nd) 1030; Fishbach Brewing Co. v. City of St. Louis, 95 S. W. (2nd) 335.) The charter and the ordinances of a city must always be in harmony with and subject to the Constitution and laws of the State. (St. Louis v. Meyer, 185 Mo. 583.) And it must necessarily follow that the action of the city authorities must not be in conflict with those of the officers and agents of the state acting regularly under the laws of the state. The Supervisor of Liquor Control, in issuing licenses, is acting as an arm of the state. His act is the act of the state. It has been held that a business or occupation licensed by the state may be regulated by the city within reasonable limits if the regulation does not impair the right under the state license, but it cannot entirely prohibit such licensed business or occupation. (Ex Parte Brewer, 152 S. W. 1068 (Tex.)). The City Director of Liquor Control cannot do indirectly what he is prohibited from doing directly, that is, impair the right of a holder of a state liquor license afforded him by it. To permit a city officer or agency to refuse a city license on the ground that the applicant has not complied with the state statute, when the state official, in the exercise of his duties under the state law, has declared the opposite and has issued a state license, would, in effect, allow the city to undo what

the state has done. This cannot be permitted under the law and no good purpose would be served in allowing it, it would only result in conflict and confusion. After the State Supervisor of Liquor Control has issued a license the director of liquor control of the city has no power to inquire into the facts upon which the action of the state official was based. The city official is only concerned with the enforcement of the city ordinances under such circumstances. The respondent was in error in refusing the relator a permit on the ground that the tavern was "never properly located (because within 100 feet of a church) and is not now properly located regardless of a partition within the building."

The pleadings and the evidence in this case show that the relator is in every way qualified, as an individual, to operate the tavern in question. Respondent, at the trial, stated that "in my opinion John Collins has one of the best—in fact I don't know of a higher typed citizen engaged in the saloon business."

It was admitted at the trial that the only question involved was one of law. The City authorities being in error as to the law, the relator is entitled, under the circumstances, to a peremptory writ of mandamus requiring the City Director of Liquor Control to issue him a permit. (Mangieracina v. Haney, 141 S. W. (2nd) 89, 92; State ex rel. Renner v. Noel, supra.)

However, it is claimed that the relator is not entitled to a permit for the reason that his license had been revoked within two years prior to the application he made to the City for the permit. In this connection our attention is called to a provision of Ordinance No. 6959 which prohibits the issuance of a license to an individual whose permit and license have been revoked within a period of two years prior to the application.

On January 3, 1945, when the State Supervisor of Liquor Control renewed relator's license he did not revoke the old license, but cancelled it. However, respondent contends that what he did amounted, in law, to a revocation for the reason that he had power only to revoke the license in view of Section 4095 R. S. Mo. 1939 and Section 4996 (a). (See Laws 1943, p. 615.) An examination of the State Liquor Control Act, Chapter 32 R. S. Mo. 39, discloses that the grounds upon which the Supervisor of Liquor Control may revoke a license are based upon misconduct, the violation of law, or the rules and regulations on the part of the operator of the tavern. The State Supervisor did not cancel relator's license in this instance upon any such ground. Having decided to issue another license, naturally, the old license should be no longer in effect. It would appear that the State Supervisor used the word "cancel" instead of "revoke" advisedly. We think there is no merit in this contention of the respondent.

The judgment is affirmed. All concur.