STATE OF MISSOURI, ex rel. LEE FLOYD, Relator, v. E. C. PHILPOT, Presiding Judge of the County Court of Douglas County, FRANK GILES and CALEB MAGGARD, Judges of the County Court of Douglas County, Respondents, No. 44098—266 S. W. (2d) 704.

Court en Banc, April 12, 1954.

*Fred M. Switzer* for relator; *Switzer, Barnes & Toney* of counsel.

736

*James E. Curry* and *John M. Bragg* for respondents.

DALTON, J.—This is an original proceeding in mandamus. Relator seeks to compel the respondents as Judges of the County Court of Douglas County to issue to him a license for the sale of intoxicating liquor of all kinds in said county at retail in the original package for consumption off the premises where sold.

The essential facts are not in dispute. Respondents are members of the County Court of Douglas County. Relator is a registered voter and taxpaying citizen of said county engaged in the sale of intoxicating liquors at retail in the original package for consumption off the premises where sold, with a place of business in the city of Ava, Douglas County. He is conducting said business under a license duly granted to him, as of July 1, 1953, by the Supervisor of Liquor Con-

trol of the State of Missouri and also under a license duly granted to him, as of July 1, 1953, by the City of Ava, authorizing and permitting him to conduct said business. The said licenses are in full force and effect and relator has at all times fully complied with the conditions, burdens, responsibilities and limitations of said licenses. Relator has also been issued a Special Tax Stamp by the Director of Internal Revenue of the United States for the sale of alcoholic beverages at retail, which stamp was issued as of July 1, 1953, and does not expire until July 30, 1954, and said stamp is displayed in relator's place of business. Relator has further paid to one Arthur Singleton, County Treasurer of Douglas County, for payment into the County treasury of the County of Douglas, the sum of Fifty Dollars ($50.00) (an amount equal to the sum paid by the relator into the treasury of the State of Missouri for the State license to sell intoxicating liquor of all kinds at retail in the original package, for consumption off the premises where sold) for the year beginning July 1, 1953, ending June 30, 1954, as required by Sec. 311.220 RSMo 1949, and as required by an order of the County Court of Douglas County.

Relator has been conducting said business since 1948 and he has been licensed by the State of Missouri and by the City of Ava each year to sell intoxicating liquors of all kinds at retail, as aforesaid. Each year, including the current year, he has paid into the treasury of Douglas County the fee required to be paid and for all years, until the current year beginning July 1, 1953, the County Court of Douglas County has issued to him a county license for said business.

On July 6, 1953, relator filed with the county clerk of Douglas County a duly signed and verified "application for county license to sell intoxicating liquors in the original package under the provisions of the Missouri Liquor Control Act of 1935." The application was addressed to the County Court of Douglas County and set forth in detail certain facts tending to show relator, as applicant therein, had met all of the "qualifications for licenses" as provided by Secs. 311.060 and 311.200 RSMo 1949, and other facts, and concluded as follows: "It is also expressly understood and agreed that the license hereby granted to me by the County Court shall be revocable by said court at any time upon proper showing of any violation by me or my employees of any law of the State of Missouri or of any regulation, ordinance or rule of the aforesaid city concerning said business of selling intoxicating liquors in the original package and upon revocation thereof I shall not be entitled to the refund in whole or in part of the fee paid for this license. I hereby tender the sum of $50.00 as payment of the fees required by this license."

The form and content of the application clearly evidences a theory that the county court had the right to issue or refuse the issuance of such a county license as the court in its discretion should determine the true facts with reference to the qualifications of said applicant.

On July 7, 1953, the County Court of Douglas County entered of record the following order, to wit, " * * * the court takes up and gives due consideration to the application of Lee Floyd for a license, or permit, to sell intoxicating liquor by the package, making a full inquiry and investigation of the same and being fully advised in the premises finds that said application should be denied: It is therefore, ordered that license, or permit, to sell intoxicating liquor by the package be refused the said Lee Floyd."

In relator's petition for the alternative writ it is charged that respondents have arbitrarily and capriciously refused to issue a license to relator in pursuance of a plan and agreement to prevent the legal sale of intoxicating liquors in said county and to thereby impose local prohibition; and that respondents claim an arbitrary discretion to issue or refuse such licenses to any and all applicants therefor. Relator alleged that his legal and equitable remedies were inadequate in that, if he continued to sell intoxicating liquors without a license issued by Douglas County, he would be subject to repeated arrests and liable to convictions for selling intoxicating liquor without such a license.

Respondents in their return to the alternative writ deny that they have arbitrarily and capriciously refused to issue a license to relator, as alleged, and they deny that their said refusal to issue him a license is in pursuance of a plan or agreement to prevent the legal sale of intoxicating liquors in Douglas County or to impose local prohibition. Respondents admit that they claim the authority to issue county liquor licenses, as alleged in relator's petition. Respondents allege that "the Liquor Control Act of Missouri of 1953, as amended, grants the authority to respondents to issue such licenses or withhold same at their discretion." Respondents admit that on July 6, 1953, relator filed his said application for a license to sell intoxicating liquor by package in Douglas County; and that on July 7, 1953, "these respondents in regular session took up and considered said application * * * and after a full investigation of the same, and after being fully advised, refused relator's application for a license to sell intoxicating liquor by the package in said county."

As stated, relator in his petition for the alternative writ of mandamus alleged that his legal and equitable remedies were inadequate "in that if he continues to sell intoxicating liquors without a license * * * issued by Douglas County, he will be subject to repeated arrests and liable to convictions for selling intoxicating liquors without a license." Relator now contends that it is not an offense to sell intoxicating liquor without a county license and that no such license is required by statute. Relator says; "The failure of the Legislature to expressly provide that it is a violation of the statute to sell without a county license tends to indicate it did not intend to make such an act a violation of law constituting a crime"; that "only by a

complicated and abstruse process of judicial reasoning can one conclude that it is a criminal act to sell intoxicating liquor without a county license''; that ''such statutory provisions and judicial processes cannot be made the basis of a criminal violation of law''; and that ''it is well established that a penal statute fixing a crime or quasi crime should so fix them that there is no uncertainty, and they should be so worded that one could read them and know whether or not he was violating the law, and they should not be so worded as to leave their substantive elements to the caprice of either judge or jury.''

The pleadings before us concede the necessity for such a county license and relator's petition is based upon the assumption that the County Court of Douglas County has the statutory authority to issue a county liquor license to him and that, under the facts shown, it was legally required to do so. The issue presented is whether the County Court of Douglas County had any authority or discretion to refuse to issue a county license to relator under the admitted facts.

The particular statutory provision for construction is Sec. 311.220 RSMo 1949, which is in part as follows: ''Counties and cities may charge for licenses—amount (1) In addition to the permit fees and license fees and inspection fees by this law required * * * every holder of a permit or license authorized by this law shall pay into the county treasury of the county wherein the premises described and covered by such permit or license are located, * * * *a fee* in such sum not in excess of the amount by this law required to be paid into the state treasury for such permit or license, as the county court, * * * shall by order of record determine, and shall pay into the treasury of the municipal corporation, wherein said premises are located, *a license fee* in such sum, not exceeding one and one half times the amount by this law required to be paid into the state treasury, for such state permit or license, as the lawmaking body of such municipality * * * may by ordinance determine.

(2) ''The board of aldermen, city council or other proper authorities of incorporated cities, may charge for licenses issued to * * * retailers of all intoxicating liquor, located within their limits, fix the amount to be charged for such license, subject to the limitations of this law, and provide for the collection thereof, *make and enforce ordinances for the regulation and control of the sale of intoxicating liquors within their limits,* provide for penalties for the violation of such ordinances, where not inconsistent with the provisions of this law.'' (Italics ours).

Relator's position is that the original liquor control act, as amended, is a comprehensive scheme for the regulation and control of the manufacture, sale, possession, transportation and distribution of intoxicating liquor; that there are no territorial restrictions on its operation within the state (Sec. 311.040 RSMo 1949); that, as applicable to Douglas County, the Act vests in the Supervisor of Liquor Control

the exclusive power to issue licenses for the retail sale of intoxicating liquors; that it was the intent and purpose of the Legislature to provide for the legal sale of intoxicating liquor throughout the state, regardless of the wishes of the inhabitants, or the county court of any particular county; that the only express authority of the county court with regard to the issue of a liquor license is to fix the amount payable for a county license and determine whether the applicant has been issued a state license for the premises located in Douglas County and whether he has paid the county the proper fee; that the location of the premises and the amount and payment of the fee are admitted; that the County Court of Douglas County has no express or implied authority to set standards for the issuance of county licenses; that it has no discretion to determine whether such standards have been complied with; that respondents have no express or implied authority to determine whether relator has met the statutory qualifications for a state license to sell liquor in Douglas County; that the Supervisor of Liquor Control and not the County Court determined that matter (Sec. 311.210 RSMo 1949); that respondents have, under the facts here admitted, only a ministerial duty to issue relator a county license; and that mandamus lies to compel the performance of that ministerial duty.

Respondents' theory is that the Liquor Control Law created three licensing authorities within the state, to wit, ''The State Supervisor of Liquor Control, the County Court of each county, and the governing bodies of cities''; that these three licensing authorities are of equal importance; that a person must secure a license from each of the said authorities to engage in the sale of intoxicating liquor; that neither authority is governed or bound by the action of the other; and that the County Court of the county where the applicant resides may make its own finding concerning his qualifications, unhampered by the conclusion of the State Supervisor of Liquor Control.

Respondents construe the granting of a county license under the provisions of Sec. 311.220, supra, as ''the conferring of a privilege, not the granting of a right''; and insist that ''it is within the sound discretion of the county court to confer or to withhold the privilege.'' State ex rel. Hawkins v. Harris, 304 Mo. 309, 263 S. W. 807, 810. Respondents further point out that ''the liquor traffic is not a lawful business except as authorized by express legislation of the state; that no person has the natural or inherent right to engage therein; that the liquor business does not stand upon the same plane, in the eyes of the law, with other commercial occupations''; and that ''it is placed under the ban of law, and it is therefore differentiated from all other occupations and is thereby separated or removed from the natural rights, privileges, and immunities of the citizen.'' State v. Parker Distilling Co., 237 Mo. 219, 255, 139 S. W. 453, 461; State v. Wipke, 345 Mo. 283, 133 S.W. (2d) 354, 355.

Respondents further contend that the County Courts of the respective counties have exclusive discretionary power to determine the qualifications of applicants for license to sell intoxicating liquor in their respective counties and to grant or refuse a county license for such purposes; and that the exercise of their discretion in determining such qualifications cannot be controlled by mandamus. Respondents say that the provisions of Sec. 311.220 RSMo 1949 are ambiguous and the meaning is not entirely clear, but that the whole act and the title of the act may be considered in construing the statute and determining the intention of the Legislature. Straughan v. Meyers, 268 Mo. 580, 187 S.W. 1159, 1161(2-6). In this connection respondents point out that, when an act is amended, the title to original act becomes a part of the title to the act as amended. Downey v. Schrader, 353 Mo. 40, 182 S.W. (2d) 320, and State ex rel. Mueller Baking Co. v. Calvird, 328 Mo. 601, 92 S.W. (2d) 184, 188.

The title of the original Liquor Control Act, Laws 1933-34, Ex. Sess. p. 77, shows ''An Act relating to * * *; authorizing counties and incorporated cities to impose and collect licenses and charges for the sale of intoxicating liquor; * * *.'' And see the title to the amending act, Laws 1935, p. 267, referring to the above and also adding the following words in the title: '' * * * providing for a limitation on the amount of license fees to be charged by counties, cities or other municipalities.'' (Laws 1935 p. 268). Also see Sec. 25 thereof amending Secs. 24 and 25 of the original Act.

Respondents cite certain cases holding that the Supervisor of Liquor Control in discharging his function in issuing licenses for the retail sale of intoxicating liquor ''exercises a judicial discretion which cannot be controlled by mandamus'' (State ex ▮ rel. Reener v. Noel, 346 Mo. 286, 140 S. W. (2d) 57, 58) and also cases holding that the Director of Liquor Control of Kansas City, who issues and revokes liquor licenses under certain ordinances of the City of Kansas City, exercises a judicial discretion in granting or refusing such licenses and that his discretion cannot be controlled by mandamus. Mangieracina v. Haney (Mo. App.), 141 S.W. (2d) 89, 91. Respondent's theory is that the county court of Douglas County may exercise the same type and kind of authority. Respondents also cite State ex rel. Kemerling v. Peterson, 240 Mo. App. 700, 214 S. W. (2d) 739, 741, dealing with the authorities of cities to require compliance with ordinances dealing with the sale of intoxicating liquors. In that case the relator had relied upon State ex rel. Collins v. Kiernan, 240 Mo. App. 403, 207 S.W. (2d) 49, 54, holding that a city official or agency could not refuse a city permit on the ground that the applicant had not complied with the state statute, when the state official, in the exercise of his duties under the state law, had declared the opposite and has issued a state license. The court said: ''After the State Supervisor of Liquor Control has issued a license the director of liquor control of the city has no power to inquire into the facts upon which the

action of the state official was based. The city official is only concerned with the enforcement of the city ordinances under such circumstances.'' Relator in the Kiernan case had also relied upon State ex rel. Hewlett v. Womach, 355 Mo. 486, 196 S. W. (2d) 809, holding that the grant of power to municipalities to make and enforce ordinances for the regulation and control of the sale of all intoxicating liquors within their limits extends to both package and by-the-drink sales, and that cities may, by ordinance, fix standards to be met before issuing a liquor license. The only requirement being that a city ordinance must not be in conflict or inconsistent with the statute, which means that the ordinance must not permit what the statute prohibits, nor prohibit what the statute permits.

Respondents in support of their contention that the county court has discretionary authority to issue or refuse a county license further cites Chapter 311 RSMo 1949 and particularly Secs. 311.060 and 311.-200 thereof with reference to statutory qualifications for applicants for liquor licenses. Respondents also cite State ex rel. Heller v. Thornhill, 174 Mo. App. 469, 160 S.W. 558, and State ex rel. Hawkins v. Harris (Mo. App.), 239 S.W. 564 and 263 S.W. 807. These last cases deal with the discretionary right of county courts under particular statutes and were reviewed in State ex rel. Renner v. Noel, supra, 140 S.W. (2d) 57, 58.

Respondents insist that in view of the title of the 1935 Act ''the new Act intended to give the county courts power to issue a license,'' regardless of the use of the word ''fee'' in the body of Sec. 311.220, supra. Respondents say that part 2 of Sec. 311.220, supra, was necessary for the reason that municipalities cannot enforce a state law and they can only enforce their ordinances, which must not conflict with the state law. Respondents have cited Secs. 311.060 and 311.200, supra, on the theory that ''the Legislature intended for these requirements * * * to be a measuring stick by which all licensing authorities were to be guided'' and, since the licensing authorities of the cities have discretionary powers in passing on applications for a liquor license, regardless of the conclusions of the State Supervisor of Liquor Control, the same rule should apply to County Courts. Respondents cite State ex rel. Hewlett v. Womach, supra, 196 S.W. (2d) 809, holding that Sec. 311.210 RSMo 1949, does not require that a city upon payment of the required fee must issue a license for the sale of package beer to every holder of a state license for that purpose. Respondents concede the County Courts have only the limited authority granted to them by statute, but insist that, when an administrative board is given powers which demand the taking of evidence or the consideration of facts to reach a conclusion, such board acts judicially in the exercise of discretion. With reference to the court's order in this case denying the issuance of a license to relator, respondents say ''It is reasonable to ▮▮▮ conclude that these respondents found that between the

first day of July and the sixth day of July, the relator had sold, or exposed for sale, intoxicating liquor, which is in direct violation of the Liquor Control Act, and, so finding, decided that since he had in defiance of the Act sold, or exposed for sale, intoxicating liquor without a county license he was a law violator and, therefore, not a person qualified under the statutes."

We find nothing in the Liquor Control Law, as now in effect, which either expressly or by implication authorizes the county court of Douglas County to fix standards or qualifications for persons desiring to sell intoxicating liquor at retail in said county or to determine whether a person to whom such a license has been issued by the State Supervisor of Liquor Control has met the statutory qualifications for such a state license.

County Courts are not now named among the "constitutional courts" in which the judicial power of the state is vested (Article V, Constitution of Missouri 1945), but such courts are recognized in the Article treating with "Local Government," and they are given authority to "manage all county business as prescribed by law." Section 7, Article VI, Constitution of Missouri 1945. The authorities are uniform to the effect that, outside of the management of the fiscal affairs of the county, such courts possess no powers except those conferred by statute. Rippeto v. Thompson, 358 Mo. 721, 216 S.W. (2d) 505, 508; Bradford v. Phelps County, 357 Mo. 830, 210 S.W. (2d) 996, 999; Lancaster v. Atchison County, 352 Mo. 1039, 180 S.W. (2d) 706, 708; State ex rel. Walther v. Johnson, 351 Mo. 293, 173 S.W. (2d) 411, 413.

Regardless of the title of the original Liquor Control Act, Laws 1933-34, Ex. Sess. p. 77, or the title of the amending act, Laws 1935, p. 267, or the title given to Sec. 311.220, supra, in the 1949 revision, we think it is clear that the "Liquor Control Law," as now written, grants no express or implied authority to the county court of a county, such as Douglas County, in connection with such retail liquor licenses under Sec. 311.220, supra, or otherwise, except to determine by order the amount of the fee to be paid into the county treasury, which fee shall not be "in excess of the amount by this law required to be paid into the state treasury for such permit or license," and to determine that a state license has been issued and that the county fee has been paid. No authority whatsoever to license, in the sense of regulation or control, is granted except as to the amount of the fee and within the limits prescribed. Nor can any power to regulate or control be implied. "If such power existed at all, it must be looked for among the powers which can be implied only as being essential to effectuate the purpose manifested in an express power or duty, conferred, or imposed upon the County Court by Statute." King v. Maries County, 297 Mo. 488, 249 S.W. 418, 420. In this case no implied powers to regulate or control are essential to effectuate the purpose manifested

in the express powers granted the County Courts under Sec. 311.220, supra.

The County Court of Douglas County had no authority whatever to determine whether relator, an applicant for a state license to sell intoxicating liquor at retail in Douglas County to whom such state license had been issued, had met the statutory qualifications set forth in Secs. 311.060 and 311.200 RSMo 1949. The exclusive authority to determine such issues and to issue such licenses for the retail sale of intoxicating liquor in said county is now vested in the State Supervisor of Liquor Control. Sec. 311.210 RSMo 1949; State ex rel. Renner v. Noel, supra, 140 S.W. (2d) 57, 58. The Liquor Control Law now provides for state licensing and state regulation and control and also, under the second section of Sec. 311.220, supra, grants specific authority to incorporated cities to "charge for licenses issued" and to "make and enforce ordinances for the regulation and control of the sale of intoxicating liquors within their limits," but very clearly county control by or through the County ▇▇ Court is excluded. And see Secs. 311.210 and 311.330 RSMo 1949. The County Courts of the several counties of the state, which counties are recognized as legal subdivisions of the state (Sec. 1, Art. VI, Constitution of Missouri 1945) are not now charged with or authorized to exercise either regulation or control over such retail sales of intoxicating liquor, as here in question. It may be true that the County Court of the local county in which the applicant resides and in which county the business is conducted is in a much better position than the State Supervisor of Liquor Control, in Jefferson City, to determine whether or not an applicant for such a license meets the said statutory qualifications, but nevertheless the Legislature has seen fit to vest such authority exclusively in such Supervisor and has divested the County Courts of any authority to regulate or control such sales of intoxicating liquor, or to determine the qualification of applicants for such license. No discretionary authority is now vested in such County Courts either to establish qualifications or to determine whether the statutory qualifications have been met in the particular case. Upon the issuance of a state license in such case and the payment of the county fee, as fixed by County Courts within the statutory limits, the county license must issue. Respondents had no discretion to refuse such license in view of the admitted facts.

▇▇ Where the facts essential to relator's rights are undisputed or have been confessed by the pleadings, the action of the licensing authority may be controlled by mandamus. State ex rel. City of Marshall v. Hackmann, 274 Mo. 551, 203 S.W. 960, 961; State ex rel. Jones v. Cook, 174 Mo. 100, 119, 73 S.W. 489; State ex rel. Foerstel v. Higgins, 76 Mo. App. 319, 328; Mangieracina v. Haney, supra, 141 S.W. (2d) 89, 91, 92; 34 Am. Jur. 851, Mandamus, Sec. 69.

Our alternative writ should be made peremptory. It is so ordered. All concur.