GUS A. JUGENHEIMER, APPELLANT, V. STATE JOURNAL COMPANY ET AL., APPELLEES.

FILED JUNE 4, 1908. No. 15,229.

Intoxicating Liquors: LICENSE. It is not an abuse of the discretion vested in the excise board of a city to refuse a license for the sale of intoxicating liquors at a place in the near vicinity of the post office and United States court house, or at any other locality in near proximity to a place which women and children, in large numbers, are daily required to visit for business or other proper purposes.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*E. J. Murfin* and *T. J. Doyle,* for appellant.

*Hall, Woods & Pound, John M. Stewart* and *T. F. A. Williams, contra.*

DUFFIE, C.

The excise board of the city of Lincoln consists of the mayor and two members chosen by the electors of the city. Section 64 of the charter grants to the excise board the following power: "The excise board shall have the exclusive control of the licensing and regulating the sale of malt, spirituous, vinous or intoxicating liquors in such city. * * * The excise board may license, regulate or prohibit the sale or the giving of malt, spirituous, vinous, mixed or fermented intoxicating liquors in said city." The applicant filed his petition with the excise board asking a license to retail intoxicating liquors at No. 916 P street, in the city of Lincoln, for the municipal year of 1907. At the time of filing his application he was engaged in the retail liquor business at said location, and had been for a year or two previous to that date. The State Journal Company, a corporation, filed a remonstrance against granting the license. A hearing was had, and the license refused. Upon appeal to the district court, taken by the applicant, the action of the excise board was affirmed, and the applicant has appealed to this court.

What is known as the "Government Square," in the city of Lincoln, is bounded on the north by P street. On the Government Square is located the United States post office and court house, and naturally it is visited by many persons, including women and children, each day in the year. From the record it is manifested that the excise board had adopted the policy of excluding saloons from all buildings on the north, east and west side of the Government Square. The record shows that during the year 1906 three licenses were granted to parties to

operate saloons in the block on P street fronting the Government Square. The excise board granting such licenses made of record the following statement relating thereto: "Be it resolved by the excise board of the city of Lincoln, Lancaster county, that, in consideration of the granting of the licenses to the applicants as follows: John V. Helm, No. 926 P street, Mark J. Wilbur, No. 938 P street, and Gus A. Jugenheimer, No. 916 P street, for this municipal year, the applicants shall not ask for licenses on the north side of P street from Ninth to Tenth streets. Be it further resolved that it is the sense of this board that after the end of this municipal year no licenses shall be granted to any one on the north side of P street between Ninth and Tenth streets." These resolutions were adopted by the unanimous vote of the board. Again, on February 20, 1907, the following resolution was adopted: "Be it resolved that it is the sense of the excise board that no saloon licenses for the municipal year commencing April, 1907, be granted to any applicants on the north side of P street between Ninth and Tenth streets." The final action of the board in refusing a license to the applicant, as appears from its record, is as follows: "Mr. Harpham. I would like to state that we talked this matter over a number of times, and we declared a policy of not granting a license on the three sides of that block, and I think we have a right to do that, leaving out the matter of the remonstrance entirely. It was largely on account of that new building there, and in one sense at the government's request, and I feel that I have got to vote against these applications purely on location. Mr. Powell. I move that the license be not granted. Seconded. Carried. Voting Aye, Powell, Harpham. Nay, Brown." Mr. Brown explains his vote as follows: "As there is some question as to the right of the board to arbitrarily refuse licenses on account of location, I would like to see it decided, and I therefore vote 'no.'"

The applicant insists that the excise board was gov-

erned in this case by the wish and will of the protestant, the State Journal Company, and it is argued that the board should be governed in its actions wholly by their own views of what the public interest demands, and not by the wish, desire, or interest of any resident, or the business interest of a private citizen or corporation. We are in entire accord with the applicant that the public interest alone should be looked to by the board in its action in granting or refusing a license, but we cannot say from the record in this case that the board was unduly influenced by the protest filed by the State Journal Company. The record, indeed, presents a state of facts from which an entirely contrary inference should be drawn. It is true that the State Journal Company owns lots 7, 8 and 9 fronting on P street, and but one or two doors west of the Jugenheimer location. It is also shown that the Burlington depot is located on P street, one or two blocks west of the block occupied by the State Journal Office, and it is claimed that the numerous passengers using that depot, and who are obliged to pass on P street to reach the business center of the city, turn to the south on reaching Ninth street, and travel diagonally across the Government Square to O street, the reason being, as claimed by the State Journal Company, that they do not like to pass along the block on which the State Journal offices are located on account of the saloons which formerly occupied the buildings in that location. The protestant further introduced evidence to show that many of its patrons and customers who would naturally use P street to reach its place of business were inconvenienced by having to take other and different routes to approach the State Journal building on account of the saloons located in that block, and which they did not care to pass; that it had about 250 employees, and that complaints have been made on account of the character of the persons who naturally visited and loitered about the saloons in question.

56

It may be that the business interest of the State Journal Company would be enhanced by refusal on the part of the excise board to grant saloon licenses for any place of business fronting on P street in that block, and that on this account it had a direct pecuniary interest in urging that the license in question be refused. We cannot presume, however, that the excise board was unduly influenced by this consideration. It is well known that the general government has expended a large amount of money in erecting a post office and court house on the Government Square facing on P street between Ninth and Tenth streets; that one entrance to the building faces on P street; that the citizens of Lincoln, in large numbers, many of them women and children, daily visit the post office; that many of the employees of the State Journal Company are young women, and, as before stated, it is abundantly shown that for a year previous to the petitioners' application the excise board, which was then composed of the same members which made up the board when petitioner's application was made, had declared a policy of refusing to license any saloons on the north, east and west side of the Government Square; that the approach to the government building and the streets leading thereto should not be obstructed by those who usually patronize the saloon, nor the sight or hearing of women and children visiting the post office be shocked by scenes or expressions coming from those under the influence of intoxicating drink, and whose sense of decency and propriety might be obscured on that account. That the excise board has a discretion in limiting the number of saloons, or in prohibiting their operation in any locality where reasonable grounds exist for such action, is manifest from what is said in *In re Jorgensen*, 75 Neb. 401. The opinion of Chief Justice HOLCOMB in that case contains the following language: "There are places in every city wherein the number of saloons should be restricted. Many reasons for such restrictions readily suggest themselves and we need not, it would seem, enter into a discussion of any of them.

This right of limitation as to numbers was distinctly recognized in *State v. City of Alliance*, 65 Neb. 524."

The members of the excise board have, in our opinion, acted in this matter, not in any capricious spirit, but in accordance with their best judgment, and after mature consideration. For more than a year the members of the board had considered the advisability of prohibiting saloons in the locality where the applicant wished a license to continue his business another year. When granted his last license, he was notified that saloons would not be allowed in the building he was then occupying in the future. It is fairly to be presumed from what appears in the record that the board in licensing the applicant and others to conduct saloons at the locality named during the year 1906 were governed largely by the consideration that it would be a hardship to refuse a license without giving the applicants ample time to find another location, or to dispose of the property which the nature of their business required. With commendable candor the members of the board have made of record the reasons moving them to refuse a license to the applicant, and this, as intimated by one of the members in explaining his vote, in order that the question of the right to refuse a license under the circumstances attending the case might be decided, and the authority of the board and the rights of applicants under similar circumstances finally settled. If, therefore, we wholly disregard the protest filed by the State Journal Company and the evidence offered in support thereof, we still find ample support for the board, in the reasons given and placed of record on the minutes of the board, for its action in this case. The board was governed in its action, not by any whim or caprice, or by any personal objection which its members had to the applicant, but, as fairly stated in the record which it made, its refusal to license a saloon in the block in question extends not alone to the plaintiff, but to every one who might apply for a license in that locality. The applicant was not denied a privilege which the board

proposed to extend to others. The privilege which he was denied was denied to every other applicant.

The record does not show any abuse of the discretion vested in the board, and we recommend an affirmance of the judgment of the district court.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.