THE STATE ex rel. JAMES P. HAWKINS v. J. W.
   HARRIS et al., Judges of County Court of Dunklin
   County.

Division One, June 10, 1924.

1. **LICENSE: Discretionary: Pool and Billiard Hall.** The statute
   (Sec. 9644, R. S. 1919) declaring that "the county court shall have
   power to license the keepers of billiard tables, . . . and all
   other tables kept and used for gaming, upon which balls and cues
   are used" does not impose a mandatory obligation upon the court
   to issue a license to a private person, who possesses all the other
   qualifications and has complied with all the conditions prescribed
   by the statute, to keep a pool and billiard hall within a city of the
   fourth class, but such power is discretionary, and cannot be con-
   trolled by mandamus.

2. ————: ————: ————: **Personal Right: Use of May or Equivalent
   Words.** The keeping of a billiard and pool hall is not recognized
   as a useful occupation, nor a private right, but one in which no
   person can engage except upon grant of the privilege or license by
   an agency of the State authorized by legislative act to grant it;
   and whenever in such legislative act there appear such words
   as "the county court shall have power to license," or "may license,"
   and the business in which the applicant wishes to engage by virtue
   of such license is not a useful occupation, or one which he cannot
   lawfully conduct except by permission of the State, such words
   cannot be construed as "shall" or "must," but as vesting in the
   county court the discretion of granting or withholding such license.

3. ————: **Billiard and Pool Hall: Relative Power of City and County
   Court.** By the statutes the authority to grant a license to keep a
   billiard and pool hall is primarily vested in the county court; the
   right of a city of the fourth class to regulate, or to license, is
   potential, and is not in actual effect until the license has been first
   granted by the county court, and it is within the sound discretion
   of that court to grant or withhold the privilege, and that discre-
   tion cannot be controlled or revised by any superintending court by
   writ of mandamus.

Headnote 1: Mandamus, 26 Cyc. 188; Licenses, 25 Cyc. 622, 623.
Headnote 2: Licenses, 25 Cyc. 614, 622. Headnote 3: Mandamus, 26
Cyc. 188; Licenses, 25 Cyc. 601, 623.

Mandamus.

Transferred from Springfield Court of Appeals.

WRIT DISMISSED.

*McKay & Jones* for relator.

The county court's refusal of the application of relator, under the facts as disclosed by the record, is clearly an unreasonable and arbitrary exercise of its authority and one which cannot rest upon any justifiable reason or excuse; the record disclosing that the court's action in refusing the application of relator is an attempt by the county court to prohibit a pool and billiard hall in the city of Kennett, which the county court cannot do. State ex rel. v. Johnson, 211 S. W. 682; State ex rel. v. County Court, 193 Mo. App. 373; State ex rel. v. Newton, 206 S. W. 392.

*James A. Bradley* for respondents; *Orville Zimmerman* for objectors.

(1) A broader discretion is given boards and tribunals in the matter of licensing occupations, vicious in their tendencies, than in occupations useful in their character. State ex rel. v. DeWitt, 160 Mo. App. 304; City of Tarkio v. Cook, 120 Mo. 1. The law lodges in the county court the discretionary power to refuse such licenses when, in their opinion, there are reasonable grounds to apprehend that the place is not suited for carrying on the business. City of Tarkio v. Cook, 120 Mo. 1. (2) Relief by mandamus, to control or review an act of discretion, cannot be had unless there has been a palpably arbitrary exercise of the discretion given in the very face of the law and the conceded facts. State ex rel. Clark v. West, 272 Mo. 304; State ex rel. v. Fackenhamer, 223 S. W. 100.

LINDSAY, C.—This cause has been transferred to this court by the Springfield Court of Appeals. It was brought in that court as an original proceeding in mandamus. The relator applied to the County Court of Dunk-

lin County for a license to operate pool and billiard tables in the city of Kennett. A hearing thereon was had in which much testimony was taken; the license was denied; and this proceeding was instituted to compel respondents as judges of said county court to issue the license. The testimony taken by the county court was transcribed, and permission given to file a copy of the proceeding in the county court. Relator's petition for the writ set forth fully the proceedings had, and was accompanied by a complete transcript thereof, and of the testimony taken, and this cause was submitted thereon, by agreement of the parties. The Court of Appeals denied the writ. [239 S. W. 564.]

It appears from the record that the relator applied for license to keep his pool and billiard tables at either one of three several locations. The county court found that he was a person of good character and bore a good reputation in the city of Kennett, but found that each of the proposed locations was so close to either a public or a private school, or to both, then being maintained in said city, that the operation of a pool and billiard hall at either of the proposed locations would interfere with the operation of said schools, and constitute a nuisance. On that ground license was denied. The finding set forth with particularity the locations of the several schools, and of the proposed places, for operating the pool and billiard tables, and the respective distances of each from the others. All of the proposed locations were on the south side of the square. A branch of the public school was maintained in a building a little west of the public square, and about 450 feet distant from the nearest proposed location, and a private school was about 325 feet distant from the nearest proposed location:

All of the judges of the Court of Appeals concurred in holding that county courts may in the exercise of discretion refuse to license pool halls, for cause, as for example, close proximity to a church or a school; that a license to keep pool and billiard tables might be refused, either because the applicant was not a person of good

character, or because the place proposed was unsuited by reason of its proximity to other institutions. They further concurred in the view that the right to try those questions was vested solely in the county court, and that the county court having heard the evidence and based its conclusions thereon, mandamus will not lie to set aside or correct its finding, and compel the granting of license, merely because the court in which relief is asked might be of the opinion that the evidence was insufficient to support the finding or that the county court had made erroneous deductions from the evidence before it; and they concurred also in the view that under the evidence in the record, the county court was not guilty of an abuse of discretion, or of arbitrary action in the instant case. The facts as developed in the hearing before the county court are sufficiently stated in the opinions filed (239 S. W. 564) and need not be repeated here. The cases in the Courts of Appeals of this State, dealing with the subject, with the powers of county courts under Section 9644 (Revised Statutes 1919), and the availability of the remedy of mandamus where license has been refused, State ex rel. McClanahan v. De Witt, 160 Mo. App. 304; State ex rel. v. County Court of Clinton County, 193 Mo. App. 373; State ex rel. v. Newton, 206 S. W. 392; State ex rel. v. Johnson, 211 S. W. 682, and also the case of City of Tarkio v. Cook, 120 Mo. 1, are discussed in the majority and concurring opinions. The rule deduced from these decisions was that county courts in exercising the powers granted by Section 9644 may not arbitrarily refuse a license—may not prohibit pool halls—but may exercise a discretion based upon consideration of evidence touching the character of the applicant, or the conditions of the proposed location, and upon that, may refuse to issue a license, and in refusing may not be coerced by mandamus.

The majority opinion of the Court of Appeals, while holding that the petition of relator was deniable upon the ground that respondents had taken evidence, and made a finding thereon, and had not abused its discretionary

power in the instant case,' a conclusion in which we concur, went farther, and sustained the action of respondents upon the ground that county courts have "the exclusive right, acting under Section 9644, Revised Statutes 1919, to grant or refuse billiard or pool room licenses, without basing their conclusion on anything other than that they may determine that such an institution in a community is a nuisance." That holding being in conflict with the decisions of the Kansas City Court of Appeals in State ex rel. v. County Court of Clinton County, 193 Mo. App. 373, and State ex rel. v. Johnson, 211 S. W. 682, the cause is certified to this court.

It becomes necessary to determine what construction is to be given to Section 9644, Revised Statutes 1919. As to the power given, that section provides: "The county court shall have power to license the keepers of billiard tables, pigeonhole tables, Jenny Lind tables, and all other tables kept and used for gaming, upon which balls and cues are used." By Section 9650 it is provided that every person who shall keep or permit to be kept or used any one or more of the tables mentioned without having a license therefor, shall forfeit and pay not less than fifty nor more than four hundred dollars to be recovered by indictment or information. The various sections governing the subject as now found in Chapter 87, Revised Statutes 1919, have been in force in this State without material change for nearly a century (R. S. 1835, p. 96) and the substantial provisions were in force in the period antedating statehood. [1 Missouri Territorial Laws, 1804-1824, p. 699.]

The occupation of keeper of billiard and pool tables, is one which has never been permitted to be exercised, except a license therefor be granted by the county court. The power to grant the license has always been vested in the county court, and without the laying down of any conditions under which, or in accordance with which, the power shall be exercised, other than the provisions fixing the amount to be paid upon each table, and the provision forbidding county courts and city authorities from levy-

ing a greater amount on any table than is allowed for state purposes.

Under Section .9651 the keepers of such tables are prohibited from allowing persons under twenty-one years of age to play thereon without the consent of the parent, master or guardian of such minor. In City of Tarkio v. Cook, 120 Mo. l. c. 10, it was said: "Keepers of billiard tables are not recognized as exercising a useful occupation. They are subject to police regulation by the State and by cities under powers granted them by the State. They are prohibited from allowing minors to play upon their tables. Villages may prohibit them altogether. Public billiard halls are regarded by many as vicious in their tendencies, leading to idleness, gambling and other vices."

In State ex rel. McClanahan v. DeWitt, 160 Mo. App., it is said, at page 308: "Keepers of billiard and pool tables are not useful occupations," and what was said in Tarkio v. Cook, upon that subject was quoted with express approval.

Somewhat more of the legislative policy of the State concerning pool and billiard tables may be observed in the charters of cities of the various classes. Towns and villages may "license, tax, regulate and prohibit" them. [Sec. 8547, R. S. 1919.] Cities of the fourth class may "license, tax, regulate or suppress." [Sec. 8497.] Cities of the third class may "license, tax, regulate or suppress." [Sec. 8322.] Cities of the second class may "license, regulate, tax or suppress." [Sec. 7976.] Cities of the first class may "license, tax and regulate." [Sec. 7674.] Cities under special charters may "license, tax and regulate." [Secs. 8701, 8713, 9654.]

The distinction between power to regulate and power to prohibit is pointed out in State ex rel. v. McCammon, 111 Mo. App. 626. It was there said: "The former contemplates the continuance of the subject-matter in existence or in activity; the latter implies its entire destruction or cessation." It is clear that the primary license to keep pool or billiard tables, is the license to be obtained

from the county court. The right given to a city to license, and to regulate pool and billiard tables is potential, but it is not in actual effect except, and until, a license first has been granted by the county court. Cases holding that the city, under power to license and regulate, cannot prohibit, have little or no bearing upon the question at issue here. The power given to the county court is not of a regulatory character. The regulatory and taxing power of the city comes into play only after there is a subject, that is, a license has been granted by the county court. On this account the provisions of charters authorizing cities to license and regulate, do not in any way enlarge or limit the powers given to county courts upon this subject; nor do the decisions holding that the power to regulate, does not include the power to prohibit, settle the question, since, as has been said, the power given to the county court to grant license, is not accompanied with a power to prescribe regulations, as to the manner in which the business shall be conducted. There is nothing in the terms mandatory, upon the county court, in the language of Section 9644. There is nothing prescribing the qualifications of the applicant, nor the character of the place where the tables are to be kept. No provision is made for a petition by him setting forth anything, nor for petitioners whom he must secure as a prerequisite, nor for a remonstrance from anyone opposed to the granting a license, nor any provision for the taking of evidence by the county court. In construing the language used in Section 9644, a comparison of that section with the statute formerly in force providing for license to keepers of dramshops, with the ruling of this court upon the latter, is pertinent. Under the statute of 1865 (G. S. 1865, chap. 98) there were certain requirements made as to the application, and the statements therein to be made, and shown. After which, there was a provision as follows: "And if the court shall be of the opinion that the applicant is a person of good moral character, the court *may grant* a license for six months." The question of the force to be given to this language came up in the mandamus proceeding in State ex rel. Kyger v. Justices of Holt County Court, 39

Mo. 521. In that case the contention of the relator was that since he filled the requirements, and had complied with all of the conditions prescribed by the statute, the county court had no discretionary power in the premises, and the license must be granted as a matter of right. It was held that since the business was one which the Legislature had not prohibited, but allowed to be exercised by certain persons, having qualifications specified by the law, it then became a "municipal privilege." It was said, at page 524: "The business, then, which the retailer seeks to engage in is not a matter of personal right, nor one that the interests of the public at large demands that he should be permitted to carry on." It was held that the county court was fully vested with discretionary powers, and might exercise the same, "subject to the limitations and restrictions absolutely imposed by statute." This ruling upon the force and meaning of the words, "the court may grant a license," was followed thereafter. In 1883, Laws 1883, page 86, the dramshop act was amended so as to make it mandatory upon the county court to issue license where the applicant, in addition to compliance with all the other statutory requirements, had a petition containing "the proper names subscribed thereto of two-thirds of the assessed taxpaying citizens and guardians of minors owning real estate therein." [Secs. 7191, 7201, R. S. 1909.]

The decision in Kyger's Case rested upon the ground that since the occupation of the relator was one which he might follow only by virtue of a granted privilege, and was not one which public interest demanded he should be permitted to follow, the grant of power to the county court was exclusive, and was permissive and discretionary, and that its exercise in an affirmative way by granting a license was not imperative upon the county court, although the applicant filled all the requirements prescribed by the statute.

Under the holding in City of Tarkio v. Cook that "keepers of billiard tables are not recognized as exercising a useful occupation," it follows that the occupation is

not such a one as the public interest demands shall be exercised, or that a person may demand, as a personal right, that he be permitted to exercise. That case arose upon a violation of an ordinance of a city of the fourth class, limiting the hours during which billiard halls should be kept open. The intimation in the opinion is clear that the city, under its power to regulate, could not fix hours for closing which were in effect prohibitory. But, what was there said must be considered in the light of the fact that the ordinance affected those persons who had already been granted license by the county court. Possessed of that, the defendant in that case was authorized under the law of the State to exercise his occupation, in the city, under such regulations as the city might impose under its power to regulate, but which must not be such as were prohibitory in effect, nor destructive of the right granted.

The words used in Section 9644 are: "The county court shall have power to license." The words used in the dramshop statute are: "If the court shall be of the opinion that the applicant is a law-abiding assessed tax-paying citizen above twenty-one years of age, the court may grant a license for six months." Each form lodges a power in the county court, but the one is in no way more potent or mandatory than the other. In Kyger's Case, the court discussing the authorities touching the construction of the word "may" as used in the dramshop law, said, l. c. 524: "These authorities are uniformly to the effect that the word is only to be construed as mandatory for the purpose of sustaining or enforcing a right, but never to create one. It cannot be said in this case that the petitioner has a legal right which he is seeking to enforce by this proceeding."

In State ex rel. v. St. Louis, 158 Mo., discussing this subject of statutory construction, this court said, at page 510: "That the word 'may' in a statute is sometimes construed to mean 'shall' is undisputed. But 'may' does not always mean 'shall' even when used in a statute conferring power on a public officer. The true rule is this: if from the whole context we gather that the statute was

designed to impose the act on the officer as a duty to be performed, then the authority to do it is an obligation to do it. It has been said that when the public welfare demands it or private rights are affected then the power to act is a duty to act. But the private interests, for the protection of which the power will be construed to be a duty, *must be such as exist independent of the grant of the power.*" The same principle, as expressed in Newburgh Turnpike v. Miller, 5 Johns. Chan. 1. c. 113, is quoted: "And in respect to statutes, the rule of construction seems to be, that the word *may* means *must* or *shall* only in cases where public interests and rights are concerned, and where the public or third persons have a claim *de jure,* that the power shall be exercised." As the instant case stands, under the legislative policy of the State, the occupation in which relator sought to engage was not one he could exercise except by grant of a privilege or license from the State. Under the holding of this and some other appellate courts of the State it is not recognized as a useful occupation. It is not an occupation which public welfare demands that he shall be permitted to exercise. His private interest or right in exercising it is not such as "exists independent of the grant of the power," to issue him a license, or, independent of the right conferred by the license itself, but is to be created thereby.

Recurring to the provisions of city charters conferring powers upon this subject as now in force, it was seen that towns and villages may "prohibit," and cities of the fourth, third and second classes may "license, tax, regulate or suppress." The power is in the alternative, to regulate or to suppress. Somewhat varying definitions of the word "suppress" are given in the law and other dictionaries. Thus, Bouvier: "Suppress: To put a stop to when actually existing." Anderson: "To prevent; never, therefore, to license or sanction." Standard: "To put down or put an end to by force; over-power; crush, subdue." Century: "To overpower; subdue; put down; quell; crush; stamp out." It is not necessary in this case

to undertake to define with precision the powers thus conferred upon these classes of municipalities. The reference is made as to a matter indicative of the legislative policy of the State. In view of that, and of the prior holdings of this court, the conclusion is reached that the granting of such a license is the conferring of a privilege, not the granting of a right; that it is within the sound discretion of the county court to confer or to withhold the privilege, and that this discretion cannot be revised or controlled by a court of superintending control by writ of mandamus, and the writ should be denied herein. *Small, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is hereby adopted as the opinion of the court. All of the judges concur.