207 P.2d 1165

**BARTH v. DE COURSEY et al.**

No. 7529.

Supreme Court of Idaho.

July 6, 1949.

Frank F. Kibler, Nampa, Ariel L. Crowley, Boise, for plaintiff and petitioner.

470

William W. Wander, Pros. Atty., and R. L. Riordan, Deputy Pros. Atty., Caldwell, for defendants and respondents.

Robert E. Smylie, Atty. Gen., and Don J. McClenahan and J. N. Leggat, Assts., Boise, as amici curiae.

PORTER, Justice.

Plaintiff owns a recreation area on the north side of Snake River in Canyon County near Walter's Ferry Bridge on the road from Melba to Murphy. On February 4, 1949, he filed application with the Board of County Commissioners of Canyon County

for a license to sell beer thereat. His application was on forms furnished by the County. It appeared on the face of the application that the applicant possessed all the qualifications and none of the disqualifications, prescribed by state law, of a licensee.

Plaintiff's application for a license was refused on the sole ground that the Commissioners would not issue a license for the sale of beer on any premises outside the incorporated limits of any city or village as provided in a resolution [1] theretofore passed by the Board of County Commissioners. Plaintiff seeks by mandamus herein to compel the issuance of license to him on the ground that such resolution conflicts with state law, is an unauthorized prohibition and not a permissible term or condition under Section 23-1015, I.C.

The decisive question in this case is aptly stated on page 4 of plaintiff's reply brief as follows:

"May the Board of County Commissioners entirely prohibit the sale of beer at retail within the County, unless the retail establishment be located within the boundaries of a city or village within said County?"

Chapter 132 of the 1935 Session Laws was the basic enactment of the beer law. Such chapter, as amended, is now Chapter 10, Title 23, I.C. By said Chapter 10, it is made lawful to sell beer in the manner and under the conditions prescribed therein. It provides for the issuance of county, municipal and state licenses. It sets forth the qualifications and disqualifications of applicants for licenses. It prescribes many regulations relative to the conduct of the business of selling beer.

Section 23-1014, I.C., a part of the 1935 act, provides:

"* * * that nothing in this act shall be so construed as to prohibit or prevent municipalities or counties fom licensing and regulating places of business where beer is sold to the consumer."

Section 23-1009, I.C., was added by Chapter 167, Session Laws of 1943. It pro-

---

[1] "Whereas, section 7-A of Chapter 192 of the 1947 Session Laws provides that it shall be unlawful for any retailer to sell beer without first procuring a retailer's license from the county, said license to be issued on such conditions and terms as may be required by the board of county commissioners in the county wherein such place of sale of beer is located,

"And whereas, it has been the policy of the county commissioners of Canyon County not to issue beer licenses outside of the incorporated cities or villages of Canyon County by reason of the dif-

ficulty of policing said retail sale of beer since the authorization by state law to permit counties to license the retail sale of beer,

"Now, therefore, it is hereby resolved that the County Commissioners of Canyon County, Idaho, will not issue a license for the sale of beer on any premises outside the incorporated limits of any city or village in Canyon City, Idaho."

Resolution passed by Board of County Commissioners of Canyon County, July 16, 1947.

vides that applications for retailers' licenses shall be made first to the municipality or county or both, as the case may be, and then to the commissioner, and the applications must show that the applicant possesses all of the qualifications and none of the disqualifications of a retailer licensee under the act, and, as to the municipal license, under any ordinance of the municipality The section then provides:

"If the applications conform hereto the municipality, county and commissioner, respectively, *shall* each issue a retailer's license to the applicant, subject to the restrictions and upon the conditions in this act specified, and, as to the municipal license, in the ordinance aforesaid." (Emphasis supplied.)

The 1947 Session Laws, Chapter 192, added Section 23-1015, I.C., which provides in part as follows:

"It shall be unlawful for any retailer to sell beer without first procuring a retailer's license from the county, said license to be issued on such conditions and terms as may be required by the board of county commissioners in the county wherein such place of sale of beer is located; * * *." Section 23-1011, I.C. provides that the issuer of a retailer's license may revoke the same for violation of the provisions of the beer law.

█ The foregoing statutes negative the thought that a county may prohibit the sale of beer therein by arbitrarily refusing to grant licenses for its sale. By the use of the word "shall" in Section 23-1009, I.C., it is made the duty of the county to grant a license to a duly qualified applicant upon such terms and conditions as the county may require.

The phrase "conditions and terms" as used in Section 23-1015, I.C., refers to provisions which must be accepted or complied with by the applicant before the license is issued. The phrase "regulating places of business" used in Section 23-1014, I.C., refers to provisions which must be complied with in the conduct of the business after a license has been issued. Both phrases refer to and are for the purpose of providing for the *regulation of the business of selling beer*. It does not appear that Canyon County has prescribed any "conditions and terms" other than the resolution in question.

█ It is the general rule that where authority to license and regulate a business is granted by the legislature to a municipality, the regulations adopted must not be unreasonable, unjust or unduly oppressive. 33 C.J. pp. 522–524; 48 C.J.S., Intoxicating Liquors, 850. Nor must such regulations be such as to be prohibitory. 30 Am.Jur. p. 367, par. 216, states the rule as follows:

"As a general rule, when a municipal corporation is specifically given authority or power to regulate or to license and regulate the liquor traffic, power to prohibit that traffic altogether is impliedly withheld. Under such a grant of authority, a municipality cannot prohibit traffic in intoxicating liquor either directly or indirectly by im-

posing prohibitive license fees or other regulations which are prohibitive in character. It cannot, in other words, effect prohibition, under the appearance of regulation, whereby those engaged in the business are harassed by arbitrary, oppressive, and unreasonable restrictions."

In O'Connor et al. v. City of Moscow, 69 Idaho 37, 202 P.2d 401, on page 405, the court said:

"This court in Continental Oil Co. v. City of Twin Falls, 49 Idaho 89, at page 106, 286 P. 353, at page 358, has said that where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then an ordinance passed in pursuance thereof must be a reasonable exercise of the power, or will be pronounced invalid; that in determining the question of the reasonableness or unreasonableness of such an ordinance, all the existing circumstances or contemporaneous conditions, the object sought to be obtained, and the necessity or lack thereof for its adoption, will be considered by the court; that whether or not an ordinance is reasonable is a question of law for the Court."

See also State v. Gregory, 191 Wash. 70, 70 P.2d 788; City of Fairfield v. Pappas, 362 Ill. 80, 199 N.E. 292; Mernaugh v. City of Orlando, 41 Fla. 433, 27 So. 34.

■ In the case at bar the resolution of Canyon County to the effect that it will not issue a license for the sale of beer outside of incorporated cities and villages amounts to prohibition for the remainder of the county; and is inconsistent with and contrary to the state law legalizing the sale of beer. Green v. Alcorn County, 192 Miss. 468, 6 So.2d 130.

■ We are not unmindful of the authorities holding that under its power to regulate, a municipality may limit the number of liquor, beer or cigarette licenses in a given area for the good of a community; or that the municipality may prohibit the sale of beer in particular and limited locations where it would be detrimental to the public welfare. However, in the instant case, the power granted the County to impose terms and conditions must be interpreted in the light of the mandatory statute providing that the county "shall" issue licenses.

■ The defendants, as appears in the record, based their refusal of a license to the plaintiff solely upon the ground of the resolution. They cannot urge at this time, some other ground for the refusal of the license. While the court will not interfere where the county has exercised an authorized discretion, it can properly do so where the refusal is predicated upon a ground not sustainable under the law.

■ The county resolution in question is unreasonable, prohibitory and contrary to the state law. The refusal to grant a license to the plaintiff based solely upon such resolution was unwarranted. Peremptory writ of mandate will be granted. Costs to plaintiff.

474

HOLDEN, C. J., concurs.

KOELSCH, Dist. J., concurs in conclusion.

TAYLOR, Justice (concurring specially).

I concur in the opinion by Justice Porter.

A basic reason for holding the ordinance prohibitory is that the county, having no authority to make police regulations for municipalities, by this ordinance refuses to consider any application on its merits, and refuses to fix any "conditions and terms" for an applicant to comply with, if the application comes from that area of the county where the board has authority to fix "conditions and terms." By this I do not mean to say that the county commissioners may not reject an application coming from a municipality if the applicant is subject to any of the disqualifications provided for by the state law. In fact, it would be their duty to reject an application subject to such disqualification. But other disqualifications which may affect an applicant within a municipality are to be provided and imposed by the municipality and not the county.

As respects police powers, the constitution makes counties and cities independent entities of equal dignity.

"Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws." Const., Art. 12, sec. 2.

This is a direct grant of police power from the people through their constitution to the counties and municipalities independent of legislative action. In my opinion it is to be construed with equal force and effect as respects both counties and municipalities so that the ordinances of neither a county nor a municipality can be considered of any greater authority or dignity than the other. The "general laws" referred to and contemplated by this constitutional provision are police regulations made by the legislature itself, to be effective throughout the state. For that reason I doubt that the legislature could by a so called "general law" provide that the ordinances of the the county, passed in pursuance of its police power, should be superior to the ordinances of the municipalities within the county, and in effect become "general laws" as to such municipalities. Such an act by the legislature, if given effect, would add to the constitutional provision the further limitation that the city and town ordinances must not conflict with the ordinances of the county. It would appear that such an act would constitute a delegation by the legislature to the county of its power to make the "general laws" for the municipalities within the county. Whereas, the constitution, as written, grants police powers on an equal basis to both within their

respective limitations; that is, within their respective territorial jurisdictions. The provision that these ordinances shall not conflict with the general law has the evident purpose of preserving to the legislature the paramount authority to make police regulations effective throughout the state.

California, having a constitutional provision in effect the same as ours, has held that it is a direct grant of police power and makes the ordinances and authority of the counties and municipalities of equal rank. In ex parte Roach, 104 Cal. 272, 37 P. 1044, 1045, the court said:

"The power to make these regulations is by this section conferred upon the city as well as upon the county, and must be held to be equally authoritative in each. It is a portion of the lawmaking power which the people through their constitution have conferred upon these respective bodies, and its exercise is entitled to the same consideration and to receive the same obedience as that portion of the same power which by the same instrument has been conferred upon the legislature. The regulations made under this authority are none the less a part of the law because the authority to make them is conferred immediately by the constitution than if it had been conferred immediately through an act of the legislature. The only limitation upon the exercise of the power is that the regulations to be made under it shall not be 'in conflict with general laws.'

As this limitation applies equally to regulations of the county and the city, it cannot be held by the terms of the limitation that the regulation of either of these bodies is a general law for the other; * * * Full effect can be given to the section by holding that each has been given the exclusive right of legislation within its own particular boundaries. By the organization of a city within the boundaries of a county, the territory thus organized is withdrawn from the legislative control of the county upon the designated subjects, and is placed under the legislative control of its own council; and the principal of local government which pervades the entire instrument is convincing of the intention to withdraw the city from the control of the county, and to deprive the county of any power to annul or supersede the regulations of the city upon the subjects which have been confined to its control."

"'* * * for difficulties and confusion arising from a clash of jurisdictions would be the only result to follow, if both the county and the municipality possessed the power of enacting police and sanitary measures within the confines of a municipality.' * * * The county, in brief, has no legal right to legislate for a municipality located within its limits upon any subject which is within the scope of the powers granted to the municipality, and particularly upon any matters involving the police power of the state." Ex

parte Knight, 55 Cal.App. 511, 203 P. 777, 779. See ex parte Pfirrman, 134 Cal. 143, 66 P. 205.

The rule of these California decisions was approved and adopted in this jurisdiction in the case of the State v. Robbins, 59 Idaho 279, 81 P.2d 1078. In Anderson v. Board of Commissioners, 22 Idaho 190, 125 P. 188, the constitutional provision was not considered.

It is to be noted in this connection that California has held that both the county and the municipality may collect a license tax for revenue purposes within the municipality. People v. Martin, 60 Cal. 153; In re Lawrence, 69 Cal. 608, 11 P. 217; In re Mansfield, 106 Cal. 400, 39 P. 775; Los Angeles v. Eikenberry, 131 Cal. 461, 63 P. 766; Ex parte Pfirrman, supra. This was undoubtedly the rule which the legislature intended to follow in providing in section 23-1016 I.C.,

"* * * that no incorporated municipality shall issue a license to any retailer until such retailer shall have first obtained a county license * * * and that a revocation of the license granted by the board of county commissioners shall work a revocation of license granted by such incorporated municipality."

In fact, this legislative intent is expressly set out in section 23-1017, I.C. The county license operative within a municipality, being intended for revenue purposes, no police power being involved, no conflict with the constitutional provision results.

However, in this case it is not necessary to decide whether or not the legislature could grant the power to the counties to make police regulations for the municipalities, because there are no words used in the beer law under consideration by which the legislature may be said to have intended to do so. The words, "said license to be issued on such conditions and terms as may be required by the board of county commissioners", found in section 23-1015, I.C., do not imply such an intent on the part of the legislature. These words are fairly susceptible only of the construction that the county is given power to impose conditions and terms upon licensees operating within the territorial jurisdiction of the county, that is, outside of the limits of the municipalities. There is nothing in the act to indicate that the legislature intended they should have any broader effect or any broader interpretation. It is an axiom of statutory construction that where an act is susceptible of two interpretations, one of which renders it constitutional and the other unconstitutional, the interpretation which sustains the constitutionality of the act must be adopted. In re Gale, 14 Idaho 761, 95 P. 679; Northern Pacific Ry. Co. v. Gifford, 25 Idaho 196, 136 P. 1131; Hall v. Johnson, 53 Idaho 667, 27 P.2d 674; Johnson v. Diefendorf, 56 Idaho 620, 57 P.2d 1068. Also, "a construction rendering a statute of doubtful constitutionality will not be adopted if another is open to the court." Scottish American Mortgage Co. v. Minidoka,

Co., 47 Idaho 33, 272 P. 498, 505, 65 A.L.R. 663; Idaho Falls v. Pfost, 53 Idaho 247, 23 P.2d 245.

If the conclusion is correct, that the county has no power to make police regulations for the municipalities within its borders, then it is clear that an ordinance by which the county declares that it will not grant a license to an applicant for the retail sale of beer within the county, unless such business is located within a municipality, is a refusal to fix "conditions and terms" which are within the jurisdiction of the county to fix, and in that sense is arbitrary. It also means that the county commissioners have construed the state beer law to provide for local option. And, in final analysis, the ordinance amounts to prohibition so far as the jurisdiction of the county is concerned. The beer law is not susceptible of such construction.

GIVENS, Justice (dissenting).

The County ordinance does not prohibit the sale of beer, but is a term or condition under which licenses will issue, in the exercise of the Commissioners' discretion expressly granted by the statute, considered by them to be thus limited for the best interests of the County. State v. Gregory, 191 Wash. 70, 70 P.2d 788.

"The designation of localities where the sale of intoxicating liquor is inhibited is not prohibition, but a mere regulation of sale." Garonzik v. State, 50 Tex.Cr.R. 533, 100 S.W. 374, syl. 1.

Cited with approval in Terretto v. State, 86 Tex.Cr.R. 188, 215 S.W. 329 at 330; Ex parte Abrams, 56 Tex.Cr.R. 465, 120 S.W. 883 at 886, 18 Ann.Cas. 45; Williams v. State, 52 Tex.Cr.R. 371, 107 S.W. 1121 at 1123.

Of the authorities cited by plaintiff, State v. Town of Clendening, 92 W.Va. 618, 115 S.E. 583, 29 A.L.R. 37, which was weakened by State v. Common Council, 102 W.Va. 94, 134 S.E. 467; 53 A.L.R. 146, and in effect abrogated by Flanagan v. Town of Petersburg, 108 W.Va. 111, 150 S.E. 382 at 383; State v. Johnson, Mo.App., 211 S.W. 682, was expressly overruled by State v. Harris, Mo.App., 239 S.W. 564, and such later repudiation was affirmed in State v. Harris, 304 Mo. 309, 263 S.W. 807, and sustained in State v. Sass, 217 Mo.App. 415, 266 S.W. 765, and adverted to with approval exactly opposite to plaintiff's contention, in State v. Noel, 346 Mo. 286, 140 S.W.2d 57 at 58.

The following authorities, under statutes similar to ours, sustain the defendants in their limiting of licenses to municipalities: Perkins v. Loux, 14 Idaho 607, 613, 95 P. 694–696, cited with approval Perry v. City Council of Salt Lake City, 7 Utah 143, 25 P. 739, 11 L.R.A. 446, as thus holding:

"* * * it was held that the city council of Salt Lake City, under a power given them by law to license, regulate, and tax the sale of intoxicating liquors, had dis-

cretion to refuse a license, notwithstanding the applicant has complied with the ordinance with respect to the petition, bond, etc., where no previous ordinance has specified the persons to whom nor the places where licenses may be granted. In this class of legislation for the regulation of the sale of liquor, it was to protect society from the evils attending it. The benefit of the dealer is not the chief end of such laws and regulations, and to intrust the privilege of selling intoxicating liquors to such persons as the allegations of the answer showed the person for whom such license was intended would be a menace to the peace and good order of the city. There is no inherent right in a citizen to sell intoxicating liquors at retail. It is a business attended with danger to the community, and it is recognized everywhere as a subject of regulation. Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620."

The majority holds that the word 'shall' in Sec. 23-1009, I.C., is mandatory and the County must issue a license if the applicant be not personally disqualified, regardless of any other consideration. Sec. 23-1009, I.C., was passed in 1943, Chap. 167, p. 349, Sec. 4, p. 352. Sec. 23-1015, I.C., was passed in 1947, and the general rule is that the latest statute controls. Lloyd Corp. v. Bannock County, 53 Idaho 478, on rehearing at page 490, 25 P.2d 217. In addition to being the previous pronouncement of this Court, this is the general rule. City and County of Denver v. School Dist. No. 1, 94 Colo. 406, 30 P.2d 866; Jensky v. State Board of Equalization, 67 Cal.App.2d 612, 155 P.2d 87; State v. District Court, 118 Mont. 127, 164 P.2d 358; Willard v. Hubbs, 30 Ariz. 417, 248 P. 32; Arkansas City v. Turner, 116 Kan. 407, 226 P. 1009.

However, the majority herein holds the earlier statute governs the later; thus, in effect, overruling Lloyd Corp. v. Bannock County, supra, which evidently no longer is the rule in this State. Furthermore, to hold that the word 'shall' in Sec. 23-1009, I.C., is mandatory as to the county, completely overlooks Sec. 23-1017, I.C., which was likewise part of the latest statute, being passed in 1947.

Section 23-1015, I.C., as will be more fully elucidated hereafter, leaves it within the discretion of the Board to grant or refuse a license in designated territory.

Sec. 23-1015, I.C., requires a party to have a license before selling beer, but does not demand its issuance. The county issues only on such terms and conditions as it prescribes and this authorizes refusal, and such was the express holding in Perkins v. Loux, supra, as stated in Darby v. Pence, 17 Idaho 697, 705, 107 P. 484, 487, 27 L.R.A., N.S., 1194:

"The writer of this opinion, however, was of the opinion that inasmuch as the statute granted to the city certain powers and required such powers to be exercised by ordinance, and the city having passed an ordinance regulating the issuance of li-

censes to sell intoxicating liquors, upon the petitioners' complying therewith the council had no authority to reject such application upon grounds and reasons not covered by the ordinance. While the *majority* of the court were of the opinion that, notwithstanding the fact that an applicant for license to sell intoxicating liquors had complied with the ordinances, yet the council had the power to refuse a license for any other good or sufficient reason appearing to them, such as the unfitness of the applicant." (emphasis added.)

Our present beer statutes are very similar to those considered in Anderson v. Board of Commissioners, 22 Idaho 190, 125 P. 188, and make applicable the ruling there with regard to the Commissioners' right to grant or refuse a license:

"The question at once arises, Why should an application *'be acted upon'* if the board have *no alternative but to grant the application?* The further inquiry arises, *why should the application be made to the board at all, and why should it be made twenty days before the meeting of the board,* if the board has no discretion in the matter?" 22 Idaho at page 197, 125 P. at page 189. While the statute expressly authorized refusal, herein there has been no refusal, the opinion considered the exercise of discretion and further held:

"Taking these provisions all together, it is clear that no one has a right to sell intoxicating liquors within the boundaries of the county, whether it be *within or without*

a municipality, until he first procures a license from the board of county commissioners; and no one has a right to sell intoxicating liquors within a municipality, although he has a county license, unless he is able to procure a license from the municipal authorities. A double check or restriction is laid about the sale of intoxicating liquors within municipalities." 22 Idaho at page 198, 125 P. at page 189.

"When the application is made to sell intoxicating liquors in an unincorporated town or rural district where there are no local police or other peace officers, it is made a positive duty of the board to investigate both the fitness of the applicant and the best interests of the community and the probability of the applicant conducting the business in a peaceable, quiet, and orderly manner, and thereby saving the county from costs and expenses in maintaining the police authority of the state in that locality. The Legislature evidently considered that the board of commissioners had been granted ample discretion to be exercised by them in all instances, whether the application be to sell within or without the limits of a municipality, and the specific thing they had in mind by the enactment of this proviso was to impose the additional duty and obligation on the board of *investigating in all cases* where the application should be made to sell liquors in a rural community or unincorporated town or village.

"It follows from what has been said that the board of commissioners had a legal discretion vested in them which they might exercise in acting upon an application for a license to sell intoxicating liquors, whether such application be made for license to sell within or without the boundaries of an incorporated city. This discretion cannot be controlled by writ of mandate." 22 Idaho at pages 199–200, 125 P. at pages 190.

The Perry case is thus further amplified and affirmed:

"We do not think that under the statute the commissioners are bound to issue a license to every one applying for it, though the application be made in conformity with the statute, and the applicant found to possess all the qualifications requisite for the issuance of a license. And such is the effect of the holding in the case of Perry v. City Council, 7 Utah 143, 25 P. 729, 998, 11 L.R.A. 446. In that case the granting of a license upon an application made in conformity with the requirements of the statute and the ordinances of the city was refused by the council without assigning any reason therefor. Upon an application for a writ of mandamus to compel the council to issue a license to the applicant the writ was denied on the ground that the granting or refusing of a license was within the discretion of the council. The then powers conferred upon the council, and the ordinances of the city relating to the issuing of such licenses, were, as appears in the statement of the case, similar to those conferred upon the county commissioners, and the present statutes, heretofore referred to, with the exception that the latter in express terms confer upon the commissioners a discretion to refuse the granting of a license. In that case, Mr. Justice Zane, in delivering the prevailing opinion, and in holding that the council had conferred upon it 'a wide discretion' in the matter, said: 'It is apparent from the act under consideration that the intention of the Legislature in conferring on the city council the power to regulate the sale of liquor was to enable that body to protect society from the evils attending it. The benefit of the dealer was not the chief end, therefore the duty of the council with respect to him must depend largely on the good of the neighborhood.' " Smyth v. Butters, 38 Utah 151, 112 P. 809, 812, 32 L.R.A.,N.S., 393.

"A city council may refuse to issue a permit to the appellant because to do so would exceed the limit of permits, fixed for the public benefit. Such limit thus fixed for permits is not arbitrary, capricious, nor discriminatory. As said in State ex rel. Brown v. Stiff, Mayor, 104 Mo. App. 685, 78 S.W. 675, reading on page 676: 'It may be apparent to the council that too many are engaging in the business for the well-being of the town, and it may be manifest that the place where it is sought to be located is not for the best.' For authorities in support of the text quoted, see In re Jugenheimer, 81 Neb. 836, 116 N.W. 966, local citation 969, 18 L.R.A.,

N.S., 386; Jugenheimer v. State Journal Company, 81 Neb. 830, 116 N.W. 964, local citation 966; Fraser v. Hunter, 96 Neb. 134, 147 N.W. 124, local citation 125; Enos v. Hanff, 98 Neb. 245, 152 N.W. 397, local citation 401; State ex rel. Hawkins v. Harris et al., Mo.App., 239 S.W. 564.

"Obviously, therefore, under the facts and the authorities above set forth, the city council of Iowa City clearly acted within its discretion in fixing the limit for cigarette permits, and in denying the appellant's application because it exceeded the number thus fixed. When so doing, the city council did not act arbitrarily, capriciously, or discriminatively." Ford Hopkins Co. v. Iowa City, 216 Iowa 1286, 248 N.W. 668, 669-670-671.

" 'The power given to a municipality to license and regulate an occupation or privilege imposes no obligation on it to grant any licenses; but includes the power to refuse a license in a particular case, even where the statutory or preliminary requirements are complied with.' 37 Corpus Juris, 182, § 28. * * * (Cases.)

"As said in People ex rel. Schwab v. Grant, Mayor, 126 N.Y. 473, 27 N.E. 964, reading on page 967, supra: 'A power to grant a privilege by one is inconsistent with the possession on the part of another of an absolute right to exercise such privilege. The requirement that a person must secure leave from some one to entitle him to exercise a right, carries with it, by irresistible implication, a discretion on the part of the other to refuse to grant it, if, in his judgment, it is improper or unwise to give the required consent.' " Bernstein v. City of Marshalltown, 215 Iowa 1168, 248 N.W. 26, 28, 86 A.L.R. 782.

"It has long been recognized in this Commonwealth that the keeping of premises for a public bowling alley may be forbidden or permitted under such supervision and control as the Legislature deems appropriate and necessary to protect the public safety, health and morals, so that such a place will not become a source of annoyance and disturbance to the public or a menace to the peace and good order of a community. St.1786, c. 68. (Cases.)

"One of the present means of regulation is the requirement of a license, which in towns may be granted, suspended or revoked at pleasure by the selectmen, *'upon such terms and conditions as they deem proper.'* (Emphasis added.) (Cases.) The selectmen, who may be assumed to be familiar with local conditions and with what will best serve the public interests of their communities, are granted broad discretionary powers. (Cases.) The respondents have not refused to act. There is nothing to show any abuse of discretion or that in reaching their conclusion the respondents committed any errors of law. There is no further duty that the respondents, acting as a public board, owe the petitioner and, consequently, there is no reason for the issuance of a writ of mandamus. (Cases.)

"The denial of the petitioner's requests calls for no detailed discussion. * * * The refusal of a license was not, as the petitioner contends, violative of any rights secured to him by the Fourteenth Amendment to the Constitution of the United States. (Cases.)" Marchesi v. Selectmen of Winchester, 312 Mass. 28, 42 N.E.2d 817, 819.

"I can see no material difference between the Legislature saying that the county court shall have power to license and saying that, if the county court shall be of a certain opinion, it may grant a license. They both are vesting in the county court a potentiality, which, under the law, they may or may not exercise, in their own good judgment. * * *

"There may be certain powers which, when delegated by the Legislature, are mandatory in their nature, where the power granted goes to the creation or regulation of a public welfare or benefit; but in our opinion the power given to the county courts under section 9644, R.S. of 1919 [Mo.R.S.A. § 15397], is not one falling into that class, and hence is not mandatory. It is stated in City of Tarkio v. Cook, 120 Mo. 1, 25 S.W. 202, 41 Am.St.Rep. 678, that many people do not regard such an occupation useful. The intimation in that case that pool rooms could not be prohibited referred to the powers of a city of the fourth class, after the county court had issued a license.

"It therefore is our opinion that the county court has the exclusive right, acting under section 9644, R.S. of 1919, to grant or refuse billiard or pool room licenses, without basing their conclusion on anything other than that they may determine that such an institution in a community is a nuisance.

"Again, there is a broader reason than all of those underlying my conviction on this question, and that is that the local communities, through their local representatives, should be accorded the right to say whether they want a pool or billiard hall in their community. It is a matter that only affects the immediate community, and that in my judgment is the reason why the Legislature has vested the sole power to say whether they will be granted, or not, in the various county courts throughout the state. To hold otherwise is to assume one more power of long-distance government, a system which is growing alarmingly serious in the state and nation. To be concrete, the representatives of the people of Dunklin county, Mo., have found that they do not want a pool hall in the county seat of that county. Those representatives are members of the county court, who are in close touch with the interests and the needs and welfare of that county and the city of Kennett. It is unreasonable to think that the people of Missouri, priding themselves on having a representative democracy, should have ever taken away from the representatives of the people of Dunklin county the right to determine

whether they would have a pool hall in Kennett, Mo., and should have vested that right in the Springfield Court of Appeals, seated on the tenth floor of an office building some 250 miles from the location of the pool hall. The trend of the times has been to center the government of the local communities in the national capital and in the state capitals. In my judgment it is contrary to the form of our government, and the time has come when the courts and all officers invested with the powers of government should see to it that all questions of purely local concern are left for decision to the localities involved. We must not forget that the stability of our government depends upon the strength exerted from the bottom up, and not from the top down.

"It is therefore our judgment that the temporary writ of mandamus should be denied. By reaching this conclusion we are in conflict with the case of State ex rel. v. County Court of Clinton County, 193 Mo.App. 373, 185 S.W. 1149, a decision by the Kansas City Court of Appeals, and for that reason this cause is hereby certified to the Supreme Court for final determination." State v. Harris, Mo.App., 239 S.W. 564 at 565-566.

and thus approved on such certification:
" * * * 'The county court shall have power to license the keepers of billiard tables, pigeonhole tables, Jenny Lind tables, and all other tables kept and used for gaming, upon which balls and cues are used.'

(Sec. 9644, Mo.R.S.1919) [Mo.R.S.A. § 15397].

" * * * His private interest or right in exercising it is not such as 'exists independent of the grant of the power' to issue him a license, or independent of the right conferred by the license itself, but is to be created thereby. * * *

"It is not necessary in this case to undertake to define with precision the powers thus conferred upon these classes of municipalities. The reference is made as to a matter indicative of the legislative policy of the state. In view of that, and of the prior holdings of this court, the conclusion is reached that the granting of such a license is the conferring of a privilege, not the granting of a right; that it is within the sound discretion of the county court to confer or to withhold the privilege, and that this discretion cannot be revised or controlled by a court of superintending control by writ of mandamus, and the writ should be denied herein." State v. Harris, 304 Mo. 309, 263 S.W. 807, at 808, 810. Cited with evident approval in State v. Noel, 346 Mo. 286, 140 S.W.2d 57 at 58.

"The question is rather, can the city refuse to issue a particular license to a particular applicant or to applicants for reasonable cause? We think they have that power, and that there is nothing in the cases cited by relators announcing a contrary rule. The city is granted the power to license, and the power to license implies

the power to refuse a particular license for cause. (Cases.)

"To hold that, when once a license has been granted by the county court, a city can do nothing but perfunctorily issue its license to the holder or holders of the county license, is to hold that the city can do nothing but impose a city tax on the tables operated thereunder at whatever place in the city the licensee may choose to select and without regard to the conditions produced thereby. The regulation of pool halls is not confined merely to their government and control after they have been licensed and established, but it extends to and includes a due and proper consideration of the character of the proposed licensee and the disposition manifested by him to conform to the reasonable regulations imposed on such licensee. It will not do to say that, under the power to 'regulate and to license' and to 'levy and collect a license tax' and to 'license, tax, regulate or suppress,' a city is compelled, regardless of the facts, to issue the license and then afterwards attempt to regulate and compel obedience by prosecution, suppression or other means." State v. Fields, 218 Mo. App. 155, 263 S.W. 853, at 858.

"The Nebraska court quoted approvingly from the body of the opinion of the Minnesota court as follows: 'The provisions of the charter vest in the common council authority to regulate and control the sale of intoxicating liquors within the city, and, in exercising that authority, the council is clothed with discretionary powers, the exercise of which cannot be controlled by the courts. The power to regulate and control includes the power to do all that is deemed, in the judgment of the council, for the best interests of the municipality and its inhabitants. It necessarily confers the power to refuse a license, or to limit the number of licenses to be granted, when, in the judgment of the council, the welfare of the city suggests such action.' " State v. Board of Com'rs of City of Las Vegas, 53 Nev. 364, 1 P.2d 570, at 573; State v. City of Racine, 220 Wis. 107, 264 N.W. 490 at 492.

"The denial of an application for a license to sell 3.2 beer as previously shown is not the denial of any right. Nor is it a denial of life, liberty, or the pursuit of happiness, within the legal contemplation of those terms. The application for a license to sell beer is a request for the granting of a mere privilege, under a regulatory police measure, which request the township board was under no duty to grant. (Cases.)" Johnson v. Board of County Com'rs of Reno County, 147 Kan. 211, 75 P.2d 849 at 858.

In re Jugenheimer, 81 Neb. 836, 116 N. W. 966, 18 L.R.A.,N.S., 386, supra; Harrison v. People, 222 Ill. 150, 78 N.E. 52 at 53; Cooke v. Loper, 151 Ala. 546, 44 So. 78, 80; Berger v. De Loach, 56 Tex.Civ.App. 532, 121 S.W. 591, 592; State v. City of Racine, 220 Wis. 107, 264 N.W. 490, 492.

The writ heretofore issued should be quashed.